[Civ. No. 8117. First Appellate District, Division One.—December 29, 1932.]

MICHAEL E. I. MITCHELL, Respondent, v. HUGH K. McKEVITT et al., Appellants.

John J. O'Toole, City Attorney, and Thomas P. Slevin, Assistant City Attorney, for Appellants.

E. R. Zion, as *Amicus Curiae* on Behalf of Appellants.

Vincent W. Hallinan, Michael Riordan and W. Earl Shafer for Respondent.

Grover O'Connor, as *Amicus Curiae* on Behalf of Respondent.

BEAUMONT, J., *pro tem.*—Michael E. I. Mitchell and other members of the San Francisco police department were examined for the purpose of establishing a list of persons eligible for appointment to the position of captain of police. The examination covered many subjects, and it appears there was a total of four hundred questions asked. A "key" for rating the answers was prepared by examiners appointed by the Civil Service Commission, and after the examination was held all participants therein were invited to inspect it. Those examined then had the privilege of objecting to the answers as given in the key, if they were of the opinion such answers were incorrect. After such inspection, Mitchell objected to the answers of three questions as fixed by the rating key. These objections were lodged with the Civil Service Commission, and the Commission, after consideration thereof, changed one of the answers to accord with Mitchell's contention, but declined to make a change in the other two answers. Thereafter Mitchell made further protest to the Commission of the two answers last mentioned and of another answer not referred to before. The Commission re-

fused to make a further change in the answers; and upon the rating of the papers as determined by the examiners, the Commission placed Mitchell number twelve in the list of those eligible for appointment to the position of captain.

An application was made by Mitchell to the superior court for a writ of mandate to compel the Civil Service Commission and its members to change the answers complained of, and to alter respondent's position on the "eligible" list. Petitioner alleged, among other things, that the questions were to be answered as "true" or "false"; that if a statement in any question was not wholly true it was to be considered "false", and the court so found. After proceedings had, the court decided the issues in favor of petitioner. A writ issued, directing that the changes be made in the answers in accordance with petitioner's prayer, and that the position of petitioner be altered on the eligible list accordingly. This would place his name tenth instead of twelfth on the list. A change of personnel of the Commission occurred in the course of the proceedings, and by consent the newly appointed members of the Commission have been substituted for those originally named. Appeal has been taken from the judgment directing issuance of the writ.

There is no lack of good faith or intentional unfairness charged against the examiners in conducting the examination or against the Commissioners in refusing to allow respondent's protest. Nor is arbitrary action alleged. Respondent contends that there was only one correct answer to each of the questions under consideration and that he gave it; that as the statements in the questions were to be answered as "true" or "false" (correct or incorrect) and were based respectively on provisions of the charter, rules defining duties of police officers and a statute, there was no element of discretion involved in determining the answers; or, if it be assumed that there was discretion, then it has been abused; that he is entitled by *mandamus* to have the correct answers substituted for the incorrect ones, and thereafter to have his proper place on the list. Appellants contend that the superior court was without jurisdiction to consider the action of the Commission in determining the result of the examination, and that the evidence was insufficient to justify the issuance of the writ.

■ Article XIII of the charter of the city and county of San Francisco deals with the civil service. It provides that the Commissioners "shall make rules to carry out the purposes of this article, and for examinations, appointments, promotions and removals . . . " (sec. 3); that the "Commissioners may from time to time provide by rule for the manner in which . . . positions shall be filled . . . and no appointment to any such place shall be made except in accordance with the provisions of this article and the rules adopted thereunder by the Civil Service Commission" (sec. 2); that all applicants for places in the classified civil service shall be subjected to examination; that "such examinations shall be practical in their character" (sec. 4); that the "Commissioners shall control all examinations" and may designate persons to act as examiners (sec. 5); and that from the "returns of the examiners, or from the examinations made by the Commissioners, the Commissoners shall prepare a register for each grade or class of positions in the classified service of the city and county of the persons whose general average standing upon examination for such grade or class is not less than the minimum fixed by the rules of the Commissioners, and who are otherwise eligible. Such persons shall take rank upon the register as candidates in the order of their relative excellence, as determined by examination, without reference to priority of time of examination." (Sec. 7.) From the foregoing it is clear that the general control of civil service examinations, including the making of rules considered advisable by the Commissioners for conducting such examinations, was vested in the Commission. Rules so made within the provisions of the charter, and in consonance with the fundamental principles thereof, are binding (*Mann* v. *Tracy*, 185 Cal. 272 [196 Pac. 484]; *Haub* v. *Tuttle*, 80 Cal. App. 561 [251 Pac. 925]; *State* v. *Listman*, 156 Wash. 562 [287 Pac. 663]), and until abrogated have the same force as provisions of the charter. (*Timmins* v. *Civil Service Commrs.*, 276 Mass. 142 [177 N. E. 1, 75 L. R. A. 1232].) The Commission provided by its rules that those examined should have the right to file with the Commission a written protest of the results of the examination. There is no claim that the Commissioners refused to consider respondent's protest, but in effect it is that, having considered it, their decision was erroneous.

Here two acts of the Commission are to be considered: The first, the refusal to change the rating key, or standard of answers; and the second, the designation of respondent's position on the eligible list. *Mandamus*, in our opinion, would lie to give the proper place on such list *after* the result of the examination is established, for it definitely follows the markings given those examined. (*Keller* v. *Hewitt*, 109 Cal. 146 [41 Pac. 871]; *Dean* v. *Campbell*, (Tex. Civ. App.) 59 S. W. 294.) In *Northington* v. *Sublette*, 114 Ky. 72 [69 S. W. 1076], it was held that while the particular grade certificate to a school is not subject to *mandamus*, still where the teacher has been examined and the grade fixed, the writ will lie to compel the issuance of the certificate.

There are many decisions involving *mandamus* and its application, but none has been presented in the briefs, nor have we been able to find one, where a court employed *mandamus* to pass upon answers to questions in an examination held by any board or commission authorized to hold such examination. *Certiorari* was resorted to in *Raaf* v. *State Board of Medical Examiners*, 11 Idaho, 707 [84 Pac. 33]. This case will be referred to hereinafter. On the other hand, we have not found any decision stating that the questions under consideration were, as here, to be answered unconditionally as correct or incorrect.

In *Tate* v. *North Pacific College*, 70 Or. 160 [140 Pac. 743, 746], appears the following: "The power to determine whether the plaintiff was entitled to a degree was vested in the faculty of the defendant. They examined him in the various branches taught by the defendant, and required for graduation, and decided, after such examination, that he was not qualified to receive the diploma or the degree, and the college refused to graduate him. In the absence of proof of bad faith, or misconduct or arbitrary action, on the part of the faculty, their decisions cannot be reversed by the court." In *People* v. *New York H. M. College*, (N. Y. Sup. Ct.) 20 N. Y. Supp. 379, 380, it is said: "The court cannot re-examine the relator as to his qualifications to practice medicine, nor go over the studies in which he is said to be deficient." The opinion of the court in *People* v. *McCooey*, 100 App. Div. 240 [91 N. Y. Supp. 436], was as follows: "Neither upon the facts nor the law was there

warrant for the granting of a peremptory writ of *mandamus*. In the absence of charges of bad faith or illegal action, we cannot review the determination of the civil service commissioners in rating candidates in competitive examinations, either by *certiorari* or by *mandamus*. *Allaire* v. *Knox,* 62 App. Div. 29 [70 N. Y. Supp. 845], affirmed 168 N. Y. 642 [61 N. E. 1127].'' In *Allaire* v. *Knox,* 62 App. Div. 29 [70 N. Y. Supp. 845], civil service required applicants for position of policeman to receive seventy per cent on mental examination, and declared applicants receiving zero in any subject ineligible. It was held that where an applicant for promotion to the position of inspector in the police department had fallen below the grading required on mental examination, and had received zero in the physical examination, *mandamus* would not lie to compel the medical examiner to cancel his report on the ground that it was false and to certify that the applicant was physically qualified. In that case it was said (p. 848): ''In the nature of things, the commissioners and those acting under their authority in conducting such examination are the persons vested with authority by the statute to determine the result of a competitive examination; and certainly no applicant for an office who is dissatisfied with the determination of these officers, upon whom is imposed the duty of determining the relative merits of those submitting themselves for examination, can ask the court to conduct a reexamination, and to reverse the action of such examiners. The examination is by statute required to be competitive, and the whole basis upon which a competitive examination rests would be swept away if one person who had failed upon such examination were allowed to prove in court or before a jury that his rating should have been different from that awarded to him.'' ''The court can neither conduct nor supervise civil service examinations,'' is a statement made in *People* v. *Creelman,* 150 App. Div. 746 [135 N. Y. Supp. 718]. In *Keller* v. *Hewitt, supra,* the court said (p. 147): ''They [board members] have power to prescribe and enforce rules for the examination of teachers, and to examine applicants, and prescribe a standard of proficiency which the person examined must reach to entitle him to a certificate (Pol. Code, sec. 1771); and, no doubt, in the exercise of these functions the board is vested with such discretionary judgment that their

action could not be reviewed—as, for instance, in determining the degree of proficiency and fitness shown by an applicant upon any matter involved in his examination, and perhaps in prescribing the standard of proficiency and subjects of examination; in such matters it may be safely assumed that, their function being largely, if not wholly, discretionary, and involving an exercise of judgment, their determination would be held final.'' The charter provisions here involved give the Commission substantially the same right to make rules for examinations as the section (Pol. Code, sec. 1771) referred to gave to the county board of education. *Northington* v. *Sublette, supra,* has the following: '' . . . if they [the examiners] make a mistake in grading the teacher that mistake cannot be corrected by *mandamus;* for in grading the teachers they must exercise their own judgment, and this cannot be controlled by the courts''. In Idaho a statute gave an applicant examined by a medical board the right to have the district court review the action of the board in refusing to grant a license. The plaintiff in *Raaf* v. *State Board of Medical Examiners, supra,* was examined by the board and had his grade fixed at 55.7 per cent. As this did not equal the passing mark of 75 per cent, a license was refused him. On *certiorari,* a review of the questions asked was had in the district court, and the court found that he was entitled to a rating of 73.48 per cent, and thereupon determined the applicant ''did not pass said examination'' and was not entitled to a license. On appeal the applicant contended the grades allowed were below those to which he was rightfully entitled. The respondent board claimed the court had no jurisdiction to review and re-examine the answers given by appellant and to rerate him thereon. The court therein, in affirming the judgment, stated that the ''affirmance is placed on the grounds that the courts have no jurisdiction under the medical law to examine applicants or review their answers and mark and grade them on such answers; such action being the duty of the medical board''.

While an analysis of the decisions referred to in the foregoing paragraph reveals among the cases certain distinguishing features as to statutory provisions as well as facts (and we do not cite the decisions from other jurisdictions as being approved by our own courts in all phases

thereof), still, as a whole, such analysis shows a marked uniformity of decision on the part of courts to leave examinations in the hands of members of boards to whom they have been entrusted. In our opinion this general view is well supported. The complexities of modern civic life demand that such problems should be determined by the boards and commissions designated by law for that purpose, and the policy of our laws is to allow this to be done with as little interference as is reasonably possible. (*Maxwell* v. *Civil Service Com.*, 169 Cal. 336 [146 Pac. 869]; *Mann* v. *Tracy*, *supra.*) To have courts review by their necessarily slow process the questions and answers of every person who voluntarily submitted himself for examination as to his qualifications and who thereafter had a competitive test that was devoid of prejudice, caprice and arbitrary action, practical in its character, given and determined in entire good faith by persons of a high degree of proficiency, but who (examinee) was dissatisfied with the grading he had received, would be a burden upon the courts (*Cook* v. *Civil Service Com.*, 160 Cal. 589, 595 [117 Pac. 663]) and the taxpayers who maintain them. We do not believe this was the intention of the framers of the charter or of the people of the municipality when they ratified the charter.

In Dillon on Municipal Corporations (5th ed., sec. 399), it is said that "when power is given to civil service commissioners, or to examining boards, acting under their direction, to test the qualifications of applicants for public office, the method of such examinations with the result arrived at, necessarily rests within their discretion and judgment upon the examination had, and is not a judicial determination of any question presented to them in such a sense that it may be reviewed by the courts on *certiorari* or *mandamus* or otherwise". (*Haub* v. *Tuttle, supra.*)

Looking to the language of the charter as it relates to the civil service and considering its general purpose, we are of the opinion that it is the intent of the charter that the decision of the Commission upon the question of the examination before us should be final. *Mandamus,* therefore, will not lie. (*Wood* v. *Strother,* 76 Cal. 545 [18 Pac. 766, 9 Am. St. Rep. 249]; *Fairchild* v. *Wall,* 93 Cal. 401 [29 Pac. 60].)

■ We do not believe it is necessary or that it would serve any useful purpose to discuss the three questions and answers with which we are concerned in this proceeding. We may state, however, that we have carefully examined them; that we are of the opinion there was sufficient basis for the decision of the Commission, and that respondent has suffered no injury from the Commission's action.

The judgment is reversed, with instructions to the superior court to enter judgment for defendants.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 27, 1933.

Seawell, J., and Langdon, J., dissented.