[Civ. No. 17831. Second Dist., Div. One. Apr. 12, 1951.]

H. J. WILSON, Appellant, v. LOS ANGELES COUNTY CIVIL SERVICE COMMISSION et al., Respondents.

H. J. Wilson, in pro. per., for Appellant.

Harold W. Kennedy, County Counsel, Andrew O. Porter and John B. Anson, Deputy County Counsel, for Respondents.

DRAPEAU, J.—From a judgment denying his first amended petition for an alternative writ of mandate and dismissing the proceeding therefor, petitioner appeals.

The facts alleged in said petition are briefly the following: On May 3, 1949, the respondent commission ordered a promotional examination for the position of chief deputy county clerk. In fixing the requirements, the commission arbitrarily restricted applicants to permanent employees of the county clerk's office and caused an official bulletin to be posted. On May 16th, the acting secretary and chief examiner for the commission "wilfully, but without lawful authority"

posted a "rebulletin" changing the requirements which had theretofore been fixed "for the sole purpose of admitting W. G. Sharp as an applicant for said position."

Thereafter the commission created an eligible list from the examination held for the position of chief deputy county clerk, on which W. G. Sharp stood first and petitioner stood second. On June 28, 1949, Mr. Sharp was appointed to fill that position.

The gist of the instant petition appears to be that Mr. Sharp was not eligible to participate in any promotional examination in the classified service of Los Angeles County, particularly the examination for chief deputy county clerk. This for the reason that the advancement of Mr. Sharp "is part of a common scheme or plan . . . to debase the principles of civil service" through the preferment and favoritism of chosen applicants brought into the service as "interns in government," and given special credits through a method of "secret and confidential recommendations" so evaluated as to constitute 25 per cent of the total grade in any examination taken by such interns.

The petition then recites the various positions held by Mr. Sharp from the time he entered the service in 1937 as an "intern in government" it being alleged that many of Mr. Sharp's appointments were not made from eligible lists, and some from eligible lists created under circumstances violative of the county charter. Petitioner particularly calls attention to the appointment of Mr. Sharp as executive assistant to the county clerk on August 5, 1946. It is alleged that such appointment was void for the reason that no examination for the position was ever given, no one other than Mr. Sharp ever applied to take it and his name alone appeared on the purported list from which the appointment was made.

Petitioner then alleges on information and belief that "each, all and every of the purported eligible lists above set out, and the positions held by W. G. Sharp" thereunder were in violation of express provisions of the county charter, and as a result Mr. Sharp "has not acquired any promotional rights in the classified service of Los Angeles County, and was not eligible to participate in the examination for the position of Chief Deputy County Clerk."

Petitioner also takes exception to the method used by the commission in adding credits for efficiency and seniority to the weighted average of one of the candidates for the position of chief deputy county clerk and the alleged unlawful inclu-

sion of the name of such candidate on the eligible list for said position. Also, that the commission's method of evaluating the efficiency and seniority of appellant was arbitrary and capricious and in contravention of the provisions of the county charter and therefore void.

Petitioner duly appealed .from. the examination for the position of chief deputy county clerk in the manner provided by law, and ''the said appeal was peremptorily denied without hearing or consideration.''

The prayer is for an alternative writ of mandate commanding the commission (1) to annul its order denying petitioner's appeal from the examination for chief deputy county clerk; and (2) to annul the eligible lists created for the positions of executive assistant to the county clerk and chief deputy county clerk and (3) for a determination that the purported appointments of W. G. Sharp to such positions on August 5, 1946, and June 28, 1949, respectively, were unlawful and void.

Neither answer nor demurrer to the petition was filed. However, pursuant to section 1107, Code of Civil Procedure, respondents on November 3, 1949, filed their points and authorities in opposition to the amended petition for the writ. On the last named date a minute order was made denying the application for the alternative writ of mandate. Thereafter, on January 4, 1950, judgment was entered denying the petition and dismissing the proceeding.

By his statement of questions involved, appellant presents the following questions for determination:

''1. Was the denial of the petition 'out of hand' by the trial court contrary to the express provisions of section 1094 of Code of Civil Procedure, and therefore reversible error?

''2. Does the petition make a sufficient prima facie showing for the issuance of an alternative writ of mandate, and was the action of the trial court in denying 'out of hand' the issuance of the alternative writ prejudicial abuse of discretion?

''3. Does section 1094.5 Code. of Civil Procedure provide the remedy for seeking judicial review of the acts of an administrative board, and did the act of the trial court in denying the petition 'out of hand' constitute a denial of procedural and substantive due process?

''4. Was the pleading of the Commission in fact a general demurrer, notwithstanding that it was termed 'points and authorities in opposition to the issuance of the writ of mandate under section 1107 Code of Civil Procedure'; and was it

reversible error for the trial court to fail to give a time and place for argument of the general demurrer, or to rule upon the general demurrer?''

In *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790, 796 [136 P.2d 304], the Supreme Court outlines the procedure to be followed in mandamus proceedings:

''First, the petitioner comes before the court governed by the provisions of the Code of Civil Procedure applicable to mandamus proceedings (Code Civ. Proc., secs. 1084 to 1097 inclusive). In the disposition of such proceedings the court is likewise governed by those code sections. The powers and duties of the court in the premises are provided for therein. Historically the writ of mandamus was devised to provide a remedy where no other remedy existed. Its purpose was to afford a means of procuring justice in the proper field of its operation where there was an asserted legal right and no specific legal remedy for the enforcement of that right. . . . The proceeding is initiated by the filing of a verified petition. The practice is to present the petition to the court with a request that the alternative writ be issued ex parte. But a petitioner is not entitled as a matter of right to the issuance of that writ. He must make a proper showing by the allegations of his petition. If his petition fails to state a prima facie case entitling him to the issuance of the alternative writ, it is within the power of the court to deny it out of hand. This is familiar practice in all courts having original jurisdiction in mandamus. Furthermore, the power of the court is not without a discretion, wisely exercised, to grant or deny either the alternative or the peremptory writ. (*Wiedwald* v. *Dodson,* 95 Cal. 450 [30 P. 580]; *Betty* v. *Superior Court,* 18 Cal.2d 619 [116 P.2d 947]; *Bartholomae Oil Corp.* v. *Superior Court,* 18 Cal.2d 726 [117 P.2d 674].) For an abuse of this discretion on the part of the lower court appropriate remedies are available in a higher court. . . .

''Second: If the alternative writ is issued it may be said that the matter then proceeds as an ordinary civil action. But this is not so in some important particulars. The requirements of the alternative writ are that the respondent do the act demanded or show cause at a specified time and place why he has not done so. In the event of non-compliance the order then is in the nature of an order to show cause where the burden is cast upon the respondent to proceed and show to the satisfaction of the court why he has not performed the act demanded by the petitioner. . . . In the superior court, on

the return of the alternative writ, the respondent may file an answer under oath (sec. 1089), in which questions of law also may be raised (sec. 1094). But the petitioner is not precluded by the answer from any valid objection to its sufficiency (sec. 1092).

"Third: When the matter is at issue on controverted questions of fact, the cause may then be said to proceed as a civil action, that is, it is set down for trial and is tried as a civil action during the course of which any competent evidence may be introduced and received and the ordinary procedural rules apply. At the close of the hearing the court makes findings of fact and conclusions of law and enters judgment either denying or granting the peremptory writ."

The court did not err in its denial of appellant's petition "out of hand" for the reason that respondents filed neither an answer nor a demurrer to the petition. Instead, they filed a memorandum of points and authorities under the provisions of section 1107 of the Code of Civil Procedure. Such memorandum is in the nature of a brief filed for the benefit of the court and had no effect on the procedure provided for in section 1094, *supra*, to wit:

"If no answer is made, the case must be heard on the papers of the applicant. . . ."

Repeating the language of *Dare* v. *Board of Medical Examiners, supra* (21 Cal.2d 790, 796): "But a petitioner is not entitled as a matter of right to the issuance of the writ. He must make a proper showing by the allegations of his petition. If his petition fails to state a prima facie case entitling him to the issuance of the alternative writ, it is within the power of the court to deny it out of hand."

Neither did the action of the trial court in denying the petition amount to an abuse of discretion.

Appellant cites *Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal.2d 321, 329 [109 P.2d 935], as authority for the proposition that "mandamus is the remedial writ which will be used to correct those acts and decisions of administrative agencies which are in violation of law, where no other adequate remedy is provided. . . . not only to compel administrative action which was refused in violation of law . . . but also to annul or restrain administrative action already taken which is in violation of law."

Conceding the correctness of the statement, nevertheless, as stated in *Lindell Co.* v. *Board of Permit Appeals,* 23

Cal.2d 303, 315 [144 P.2d 4]: "It is the general rule that the writ of mandamus may not be employed to compel a public administrative agency possessing discretionary power to act in a particular manner. The court in response to appropriate application may compel such agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency. (16 Cal.Jur. 809, § 28, and cases there cited; 34 Am.Jur. 856, § 68, with supporting authority.) In a proceeding of this character, challenging the propriety of a decision of an administrative board, the attitude of the courts is well stated in the following language found in the case of *Maxwell* v. *Civil Service Commission,* 169 Cal. 336, 339 [146 P. 869]): 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' Like expression of this general policy of the courts toward administrative agencies may be found in *Pratt* v. *Rosenthal,* 181 Cal. 158, 164 [183 P. 542]; *Mann* v. *Tracy,* 185 Cal. 272, 274 [196 P. 484]; *Bank of Italy* v. *Johnson,* 200 Cal. 1, 31 [251 P. 784]; *Mitchell* v. *McKevitt,* 128 Cal.App. 458, 465 [17 P.2d 789]; *Dierssen* v. *Civil Service Commission,* 43 Cal.App.2d 53, 59 [110 P.2d 513]; and *Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176, 179 [110 P.2d 453]."' See, also, *Conroy* v. *Civil Service Commission,* 75 Cal.App.2d 450, 457 [171 P.2d 500].

 The foregoing rules of law appear particularly applicable to the instant situation. Under article IX of the county charter establishing civil service, it is incumbent upon the respondent commission to adopt and enforce such rules and regulations as may be proper and necessary for the enforcement of the provisions of such article. As stated in *Almassy* v. *Los Angeles County Civil Service Com.,* 34 Cal.2d 387, 396 [210 P.2d 503]: "It is manifest from the provisions of the charter and rules above quoted that subject to the limitation that 'all examinations shall be impartial and shall deal with the duties and requirements of the position to be filled' (Art. IX, § 36; rule VII, § 3), the civil service commission has been given broad discretionary powers in determining the subjects of examination and the qualifications which are to be measured. (See Field, Civil Service Law, 1939, p. 86, pp. 132-133; *Keller* v. *Hewitt,* 109 Cal. 146, 147 [41 P. 871]; *Maxwell* v. *Civil Service Com.,* 169 Cal. 336, 338-339 [146 P. 869]; *Haub* v. *Tuttle,* 80 Cal.App. 561, 569-

570 [251 P. 925]; *Mitchell* v. *McKevitt,* 128 Cal.App. 458, 465 [17 P.2d 789].) Judicial interference under such circumstances is unjustified except on a showing of arbitrary, fraudulent, or capricious conduct, or a clear abuse of. discretion. (*Pratt* v. *Rosenthal,* 181 Cal. 158, 163-164 [183 P. 542]; *Nelson* v. *Dean,* 27 Cal.2d 873, 881 [168 P.2d 16, 168 A.L.R. 467]; *Dierssen* v. *Civil Service Com.,* 43 Cal.App. 2d 53, 63 [110 P.2d 513].)''

Turning again to the allegations of the instant petition, appellant first charges that as to the examination for chief deputy county clerk, the secretary and chief examiner for the commission, ''wilfully, but without lawful authority'' changed the five year requirement of ''administering or managing the personnel and activities of a major division of the Department of County Clerk,'' as set forth in the original bulletin, to ''administering or managing or assisting in the administration or management of the personnel and activities of the Department of County Clerk, or administering or managing a major division thereof.''

Pursuant to an order of this court granting appellant's application for leave to produce additional evidence, a certified copy of rule V of the respondent commission is now before us. This provides that ''subject to the direction and approval of the Commission,'' the secretary and chief examiner ''shall have charge of all matters pertaining to the preparation and conduct of examinations,'' down to the smallest detail, including the preparation and posting of official bulletins.

Appellant next complains that the examination for chief deputy county clerk was void because limited to employees in the department of county clerk; that such examination should have been an interdepartmental promotional examination. This was a promotional examination and was given in accordance with a rule of the commission providing for two types of promotional examinations: (a) Departmental and (b) Interdepartmental.

As heretofore stated, appellant's main complaint is that the respondent commission had no right to permit Mr. Sharp to take the examination for chief deputy county clerk based upon a void appointment to the position of executive assistant county clerk. The latter appointment was made from an eligible list, a copy of which is here in evidence. True, it contains only one name. But it shows that its basis was an ''Unassembled examination'' and that the candidates were ''Rated on their professional training and experience and

their aptitude and personal suitability as evidenced by investigation.'' It is a matter of common knowledge that written examinations are often waived in the selection of appointees for positions in the civil service, particularly in those fields requiring special or professional training.

The respondent commission is vested under the county charter with a high discretion, and the instant petition is insufficient to show an abuse thereof.

With respect to appellant's criticisms of the method used by the commission in evaluating efficiency and seniority, the case of *Almassy* v. *Los Angeles County Civil Service Com.*, 34 Cal.2d 387 [210 P.2d 503], puts at rest for all time the validity of the practice of the commission of adding credits for efficiency and seniority to the weighted averages in promotional examinations.

There is no allegation in the instant petition showing that any inquiry under section 1094.5, Code of Civil Procedure, was involved herein.

In the circumstances presented, the trial court properly denied the application for the writ.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 1, 1951, and appellant's petition for a hearing by the Supreme Court was denied June 11, 1951.