[Civ. No. 23182.    Second Dist., Div. Three.    Jan. 6, 1959.]

H. J. WILSON, Appellant, v. WILLIAM G. SHARP et al.,
Respondents.

John J. Guerin for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and
Lloyd S. Davis, Deputy County Counsel, for Respondents.

VALLÉE, J.—Appeal by plaintiff as a taxpayer from a judgment for defendants in an action for declaratory relief and to recover public moneys allegedly paid out without authority of law. Recovery is sought from defendant William G. Sharp of salary paid to him. Liability is sought to be imposed on defendants Clifford N. Amsden, Secretary and Chief Examiner of the Civil Service Commission of the County of Los Angeles, and Joseph M. Lowery, Auditor of the County of Los Angeles, for causing to be paid and paying the salary to Sharp.

The second amended complaint in substance alleges:[1]

1. Plaintiff is a resident and taxpayer of the county of Los Angeles. On June 5, 1946, the civil service commission ordered a promotional examination for the position of executive assistant in the department of the county clerk. On July 1, 1946, Sharp was given a temporary appointment as executive assistant to the county clerk. On July 5, 1946, a bulletin with respect to the examination was published by the commission. The bulletin limited applicants to employees in the department of the county clerk. Defendants, as part of a common scheme or plan to secure the appointment of Sharp to the position of executive assistant county clerk, a position in the classified service of the county, and to pay or cause to be paid to Sharp the salary for the position, fixed and determined the requirements for participation in the promotional examination for the position. Sharp filed an application for the examination. No written or oral examination was given. On July 30, 1946, the commission promulgated an eligible list for the position which showed that Sharp was the only applicant, that no examination was held, that applicants were restricted to employees in the department of the county clerk, that Sharp was declared eligible for certification for appointment to the position despite the fact the commission determined his grade by investigation and not by competitive examination.

2. On August 2, 1946, the commission certified the name of Sharp to the county clerk as eligible for appointment to the position of executive assistant in the department of the county clerk. On August 5, 1946, Sharp was appointed to the position. He served in it until June 29, 1949, except for a period from October 6, 1948, to March 21, 1949, during which

[1]The original complaint was filed December 3, 1951.

time he served as county clerk under a temporary appointment.

Recovery was sought for the county of moneys paid to Sharp as salary.

The court, after a protracted trial, found: 1. At all times mentioned in the second amended complaint Sharp was a de jure officer or employee of the county. 2. At all times between July 1, 1946, and June 27, 1949, the position of executive assistant county clerk was a position in the classified service of the county. 3. The commission promulgated an eligible list for that position on July 30, 1946. 4. The applicants for the examination were restricted to employees in the department of the county clerk in accordance with rules of the commission. 5. Sharp was the only person to file an application for the position. 6. The grade of Sharp was determined by an unassembled examination based on his professional training and experience and his aptitude and personal suitability in accordance with the rules of the commission. 7. In reliance on the certification by the commission, the county clerk appointed Sharp to the position of executive assistant county clerk on August 5, 1946. 8. Sharp served in that position through and including October 5, 1948, and while so serving was paid salary from public moneys of the county. 9. On March 21, 1949, Sharp returned to the position after a leave of absence during which he held a temporary appointment as county clerk, and served as executive assistant through and including June 26, 1949, and while so serving was paid a salary. 10. It is not true that no person other than Sharp was able to file for the promotional examination for the position; at least 10 persons, including plaintiff, were eligible to apply for the position. 11. Defendants are not indebted to the county of Los Angeles in any sum.

■ Plaintiff contends Sharp was a de facto employee in the classified service of the county during the period in which he served as executive assistant to the county clerk and therefore not entitled to the compensation paid him while serving.

Plaintiff's contention is answered by *Wilson* v. *Los Angeles County Civil Service Com.*, 103 Cal.App.2d 426 [229 P.2d 406]. That was a proceeding in mandamus to compel the Civil Service Commission of the County of Los Angeles to annul its order denying the appeal of the petitioner, Wilson, plaintiff here, from an examination for chief deputy county clerk and from the determination of the efficiency of Sharp; to annul the

eligible lists created by the commission for the positions of executive assistant to the county clerk and chief deputy county clerk and for a determination that the appointments of Sharp to such positions on August 5, 1946, and June 28, 1949, respectively, were unlawful and void. The petition alleged substantially the same facts as are alleged in the present case. The trial court denied the writ.

Holding on review that the petition did not state facts sufficient to constitute a cause of action for relief by writ of mandamus, the court stated (103 Cal.App.2d 432):

"Under article IX of the county charter establishing civil service, it is incumbent upon the respondent commission to adopt and enforce such rules and regulations as may be proper and necessary for the enforcement of the provisions of such article. As stated in *Almassy* v. *Los Angeles County Civil Service Com.*, 34 Cal.2d 387, 396 [210 P.2d 503] : 'It is manifest from the provisions of the charter and rules above quoted that subject to the limitation that "all examinations shall be impartial and shall deal with the duties and requirements of the position to be filled" (Art. IX, § 36; rule VII, § 3), the civil service commission has been given broad discretionary powers in determining the subjects of examination and the qualifications which are to be measured. [Citations.] Judicial interference under such circumstances is unjustified except on a showing of arbitrary, fraudulent, or capricious conduct, or a clear abuse of discretion. [Citations.]'

"Turning again to the allegations of the instant petition, appellant first charges that as to the examination for chief deputy county clerk, the secretary and chief examiner for the commission, 'wilfully, but without lawful authority' changed the five year requirement of 'administering or managing the personnel and activities of a major division of the Department of County Clerk,' as set forth in the original bulletin, to 'administering or managing or assisting in the administration or management of the personnel and activities of the Department of County Clerk, or administering or managing a major division thereof.'

"Pursuant to an order of this court granting appellant's application for leave to produce additional evidence, a certified copy of rule V of the respondent commission is now before us. This provides that 'subject to the direction and approval of the Commission,' the secretary and chief examiner 'shall have charge of all matters pertaining to the preparation and

conduct of examinations,' down to the smallest detail, including the preparation and posting of official bulletins.

"Appellant next complains that the examination for chief deputy county clerk was void because limited to employees in the department of county clerk; that such examination should have been an interdepartmental promotional examination. This was a promotional examination and was given in accordance with a rule of the commission providing for two types of promotional examinations: (a) Departmental and (b) Interdepartmental.

"As heretofore stated, appellant's main complaint is that the respondent commission had no right to permit Mr. Sharp to take the examination for chief deputy county clerk based upon a void appointment to the position of executive assistant county clerk. The latter appointment was made from an eligible list, a copy of which is here in evidence. True, it contains only one name. But it shows that its basis was an 'Unassembled examination' and that the candidates were 'Rated on their professional training and experience and their aptitude and personal suitability as evidenced by investigation.' It is a matter of common knowledge that written examinations are often waived in the selection of appointees for positions in the civil service, particularly in those fields requiring special or professional training.

"The respondent commission is vested under the county charter with a high discretion, and the instant petition is insufficient to show an abuse thereof."[2]

The second amended complaint also alleges that since August 5, 1946, the commission has not at any time certified to the auditor, Lowery, on any payroll of the county that Sharp was appointed or employed and was performing service during the period of the payrolls in accordance with article IX of the charter of the county and the rules of the commission, as the commission was required to do as a condition precedent to the auditor approving any salary by reason of the provisions of section 38 of article IX of the charter; unless restrained, Lowery will continue to approve for payment the

[2]Various facets of this action have also been considered in *Wilson* v. *Los Angeles County Civil Service Com.*, 95 Cal.App.2d 51 [212 P.2d 260], *Wilson* v. *Los Angeles County Civil Service Com.*, 97 Cal.App.2d 777 [218 P.2d 547], *Wilson* v. *Los Angeles County Civil Service Com.*, 106 Cal.App.2d 572 [235 P.2d 620], *Wilson* v. *Los Angeles County Civil Service Com.*, 126 Cal.App.2d 679 [273 P.2d 34], and *Wilson* v. *Sharp*, 42 Cal.2d 675 [268 P.2d 1062].

monthly salary warrants of Sharp without the certification required by section 38 of article IX of the charter.

With respect to these allegations the court found: 1. At all times since August 5, 1946, the account for salary and compensation of Sharp has borne the certificate of the commission that Sharp was appointed and employed and was performing services for the county in accordance with article IX of the charter and the rules of the commission established thereunder. 2. The certification was made in the form approved by the auditor and the commission pursuant to discretion vested in them by the provisions of section 85 of ordinance 4099 of the county, added by ordinance 4354 on June 2, 1944. 3. The facts alleged in this connection have been well known to plaintiff since August 5, 1946, but he has, nevertheless, delayed bringing this action for an unreasonable and unnecessary period of time, and the unreasonable delay was prejudicial to the defendants. 4. During this period of delay, Lowery has approved the payment of many hundreds of thousands of payroll warrants to employees in the classified service of the county in amounts totaling many millions of dollars pursuant to administrative procedures which were adopted by the county and which are substantially identical to those pursuant to which payments to Sharp were made. 5. It would be highly prejudicial to Lowery and to the thousands of employees in the classified service of the county to permit plaintiff to attack this procedure at this late date. 6. Since August 5, 1946, plaintiff Wilson has been an employee in the classified service of the county and at all times has received and continues to receive salary warrants for compensation issued and approved by Lowery pursuant to administrative procedures adopted by the county about July 1, 1945. 7. Plaintiff has not at any time refused to accept salary warrants so paid to him as such classified employee and has not questioned the legality of the administrative procedures until the filing of this action on December 3, 1951.

Plaintiff contends the payroll procedure was illegal and that as a result of such illegality the moneys paid to Sharp as salary were unlawfully paid.

Section 38 of article IX of the Charter of the County of Los Angeles reads:

"The Auditor shall not approve any salary or compensation for services to any person holding or performing the duties of a position in the classified service, unless the payroll or *account* for such salary or compensation shall bear the certifi-

cate of the Commission that the persons named therein have been appointed or employed and are performing service in accordance with the provisions of this Article and of the rules established thereunder." (Stats. 1913, ch. 5, pp. 1484-1496. Emphasis ours.) The rules of the commission contain an identical provision.

Section 11 of article III of the charter provides the following among the duties of the board of supervisors:

"To provide, publish and enforce, a complete code of rules, not inconsistent with general laws or this Charter, prescribing in detail the duties, and the systems of office and institutional management, accounts and reports for each of the offices, institutions and departments of the county."

Pursuant to this command the board of supervisors on June 2, 1944, adopted ordinance 4354 which provides:

"Payrolls: How Prepared. The Auditor shall prepare all payrolls in the manner and upon the forms prescribed by him. Each department head shall be responsible for maintaining his department's personnel and time records and shall certify such information as is necessary in the preparation of the payroll to the County Auditor and the Civil Service Commission at the time and upon the forms prescribed by the County Auditor and approved by the Civil Service Commission."

The procedure for the preparation of payrolls or accounts for salary or compensation of persons holding or performing the duties of a position in the classified service was as follows: When a person was appointed to a civil service position an incoming report was prepared in triplicate by the department in which the person was employed. Two copies of this report were submitted to the civil service commission where the report was checked to determine whether the employee had been appointed in accordance with civil service requirements. The commission then certified one copy and forwarded it to the auditor. From this report a tab card was cut, permitting the mechanical preparation of the payroll or account and of the salary warrant. If there was any change in the civil service status of the employee a change-of-status report was prepared. The change-of-status report, was, in turn, certified by the commission, forwarded to the auditor, and a new card prepared for the employee. The certification of the commission consisted of a rubber stamp on the incoming report and on the change-of-status report reading "Approved: Civil Service Commission (date)." The stamp was initialed by an authorized representative of the commission.

If an employee's employment was terminated, an outgoing report was prepared, certified by the commission, and sent to the auditor.

The change-of-status report from which the payroll account of Sharp was made up bore the certificate of the commission at all times. It showed his number as an employee, that his position was executive assistant in the department of the county clerk, that his position was permanent, that he had been certified, the beginning date of his employment, his schedule number, his salary rate, his retirement rate, and the retirement amount. It was approved by the commission and dated by a rubber stamp, and initialed by an authorized representative of the commission. There was evidence that all change-of-status reports with the exception of absence reports are certified to the auditor by the commission, certifying that a person has been duly appointed to a particular position, that he is performing the services indicated on the report, that it is unnecessary for the commission to report to the auditor the employee is still performing the services for each salary warrant, and that the commission has so indicated until a new change-of-status report is certified to the auditor by the commission.[3]

---

[3]Mr. Nichols, Chief of the Special Claims Division of the Department of Audit and Controller in the department of Auditor Lowery, testified: "An employee is hired by a department. There is a report called an incoming report that is prepared by the department, or the County Clerk in this particular case. It is submitted to the Civil Service. They check the report, itself, to determine that the employee has been certified to the position as shown on the report. They certify to the Auditor. The Auditor checks it as to salary for the position that has been approved by Civil Service. We then proceed to punch a tabulating card with all of the pertinent information, and that card is then filed in a regular tab card file and is kept there until such time as it is necessary to write a payroll, and that card is used continually, month after month, until such time as there is a change that may come through for the employee. Then that change is reflected, and that is done with all employees within the County Clerk's office, or the entire county service for that matter. That card remains in the file even after the change is made until that employee may be relieved of the county service and then it is removed. Generally speaking, that is a brief summary of how we maintain the records for all employees. . . . As I understand it, Mr. Nichols, when making up a payroll, you refer to the tab card to see if the employee is still employed, is that correct? A. That is correct. . . . Q. Now, does the change of status report show that William G. Sharp has been appointed or is employed and is performing services in accordance with the provisions of Article IX of the County Charter? A. That is the object of the approval of Civil Service, that they are making that certification that the services are performed and Mr. Sharp is employed in accordance with that provision. . . . In this particular case, in the case of Mr. Sharp the only report that we have is a change of status report. The last one

The change-of-status reports, certified as they were by the commission, constituted certificates of the commission on the account for the employee's salary or compensation that the person named therein had been employed or appointed and

is dated effective 6-27-49 to the position of Chief Deputy County Clerk. . . . All of the reports, with the exception of an absence report, is certified to the Auditor by the Civil Service, that the person is properly performing, employed, and is performing the services as indicated on the report. From that point on we feel it unnecessary for the Civil Service Department to report to us that the employee is still performing the services. They have so indicated on the reports from which our records are prepared. Q. In other words, once you receive a report, you assume that the employee continues on in that position until you are notified by the Civil Service Commission of a change, is that correct? A. We have no reason to believe otherwise, that he is not. We have some 37,000 county employees, and we have to adopt some—— . . .

"Q. By Mr. Davis: Mr. Nichols, in the ordinary course of events since 1949, have these change of status reports been prepared on some specific type of form? A. The form, itself, which you have there, I think, is perhaps the latest design that we are using. The Department prepares the form. It is one that is filled out by the Department. The design of the form originates in Civil Service, in conjunction with our own Department. Q. You mean the original design of that form was prepared—— A. Drawn. Q. Drawn by Civil Service Department and the County Auditor's Department in conjunction with each other, is that right? A. Yes, that is right. Q. And then these forms, I assume, are they distributed to every County Department throughout the County? A. That is right. Q. Now, if there is a change of status in a particular employee, who fills out the form? A. The affected department. Q. I see. Then what happens to the form? A. The form then is routed to the Civil Service Commission for checking as to accuracy, and then—one copy of it reaches the Auditor. If you will notice, the form is so designated, Departments: Auditor, Civil Service. The original remains with the Civil Service and the Auditor gets the second copy, and the third copy is retained by the Department. Q. Then those forms are always prepared in triplicate? A. That is right. Q. And they are routed from the department to the Civil Service Commission, is that right? A. That is right. Q. And then you, in turn, the County Auditor gets the second copy? A. That is right. Q. And then after it reaches your department, what happens to it? A. It is checked by our own employees to determine that certain information is correct. It is then sent to our tabulating unit of our payroll section where the pertinent information is either punched originally into a card and then filed or if it is a change of status such as this, the only information that is changed is necessary to be punched into the card, into a new card, and it is then filed for future processing in payrolls. Q. Mr. Nichols, I will show you a form here that says 'Incoming Report.' What is that form used for? A. That is for new employees coming into the service or into any department. Q. And again, is that in triplicate? A. That is in triplicate, first, second and third copies, and they go to the departments as indicated. Q. This one has stamped on the bottom, 'Approved, Civil Service Commission' with a date and initial. Is that on the blank form or is that just on this example? A. No, that is just on this example. Q. To show the manner in which it is certified? A. That is right. . . . Q. By Mr. Davis: I will next show you a form marked 'Outgoing Report.' Can you tell us what that is used for? A. That report is used when employees are leaving the County Service and it, too, is in triplicate and requires a certification of the Civil Service, and on that we show the outgoing earnings of the employee. Q. Now, what happens

was performing service. All the auditor needed to do was to check the change-of-status report against the salary ordinance and ascertain that the position was in the ordinance and that the rate of pay was as it was there fixed. Under ordinance 4354 the department head certifies personnel and time records to the auditor and to the commission. The commission and the auditor did everything required of them by the charter, ordinance 4354, and the rules of the commission. Under the procedure followed the records in the auditor's office cannot differ from those in the commission's office. We think it manifest that the procedure followed conformed to the requirements of the charter and the rules of the commission. (*Cf. In re Smith,* 33 Cal.2d 797, 800-801 [205 P.2d 662]; *Galli* v. *Brown,* 110 Cal.App.2d 764, 781 [243 P.2d 920].) It is presumed that official duty has been regularly performed. (Code Civ. Proc., § 1963, subd. 15.) Plaintiff's claim that public moneys were illegally paid to Sharp by reason of the payroll procedure is wholly without merit.

On June 27, 1949, Sharp was appointed chief deputy county

when that report comes to your department? A. That is a notice to us, then, to withdraw from our tab card files the card of the employee and then he is no longer paid, subsequent to that. . . . Q. Mr. Nichols, county employees in the classified service are paid either semi-monthly or monthly; is that correct? A. That is true. Q. And in ascertaining the amount for each salary warrant for each employee that shall be drawn and approved by the auditor, it is assumed that unless there are absence reports on file for the particular employee that he shall be paid for a full month's salary for that particular month; is that correct? A. That's right. Q. These absence reports are made to the auditor by the head of each department; isn't that correct? A. Yes, and a copy of which goes to the Civil Service. . . . The tab card would reflect the current information that is needed to produce a paycheck to any employee. First off, it would have an employee number; it would have the classification number, the employee number, whether or not he is in a retirement system, and there are four of them within the county service; the department number, the date of last change of status report that may have flowed into the office. It has a pay location number. It has a tax class number. It has a code as to whether or not he is a member of AID, which is a charitable organization within the city to eliminate the necessity for annual solitication for welfare needs. It has the rate of pay. It has the retirement percentage. I believe that is all. . . . Q. Mr. Nichols, those change of status reports which bear the certificate of the Civil Service Commission are retained as permanent records of your department? A. Yes. . . . Q. Mr. Nichols, will you show me on the original change of status report which we have a copy in evidence, Exhibit 30, where the seal of the Civil Service Commission appears? A. The reports do not bear a seal as such. They bear a rubber stamp, 'Approved, Civil Service Commission,' and the date. Q. Have you a rubber stamp approval? A. That is right. Q. I see. In fact, it is not even signed by an individual, is it? A. It is initialed by an individual. That is this here. Q. And it is the rubber stamp of the Commission? A. That is right.''

clerk in the department of the county clerk. There is much discussion in the briefs of plaintiff-appellant with respect to that appointment. That question is not before us. The complaint is silent with respect to that appointment. No facts are alleged and no findings were made with respect to it. The only allegation in the complaint with respect to any period after June 26, 1949, is that defendants are indebted to the county of Los Angeles for public moneys of the county paid to Sharp after June 28, 1949, and the court found that no one of defendants is indebted to plaintiff for public moneys of the county paid to Sharp. ■ In an action against public officers in which it is sought to hold them personally liable, the complaint must set forth the special circumstances which are relied on to establish the liability. (*Gray* v. *Southern Pac. Co.*, 21 Cal.App.2d 240, 245 [68 P.2d 1011].) In any event, the question of the validity of Sharp's appointment as chief deputy county clerk was settled by *Wilson* v. *Los Angeles County Civil Service Com.*, supra, 103 Cal.App.2d 426.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 4, 1959.