[Sac. No. 5761.  In Bank.  Apr. 4, 1946.]

R. S. NELSON, Petitioner, v. JAMES S. DEAN, as Director, Department of Finance, etc., et al., Respondents.

James H. Phillips for Petitioner.

Robert W. Kenny, Attorney General, and Wilmer W. Morse, Deputy Attorney General, for Respondent.

SCHAUER, J.—Petitioner, a civil service employe of the State of California, seeks mandate to compel allowance of sick leave with pay for three days, July 18, 19, and 20, 1945, when he was necessarily absent from his regularly assigned duties in the Department of Finance in order to care for his critically ill wife. He had at the time of such absence accumulated to his credit 59 days of unused sick leave. He duly filed with the Department of Finance his request for sick leave with pay. On October 18, 1945, the State Personnel Board approved such request. The Department of Finance refuses to allow petitioner such sick leave with pay and has deducted $13.07 from petitioner's salary for one fourth of July 18 and all of July 19 and 20, 1945, and has charged the remaining three fourths of July 18 against petitioner's earned vacation time. Respondents, the Director of Finance and the Controller of the State of California, have demurred generally to the petition for writ of mandate and by stipulation the issues have been submitted for final adjudication without the issuance of an alternative writ.

At the time of petitioner's absence in July, 1945, rule 191 (formerly rule 14a) of the State Personnel Board, as amended December 28, 1943, provided that state civil service employes were entitled to twelve days of sick leave with pay for a calendar year of service, cumulative from year to year to a total of one hundred working days, and that *"Sick leave is hereby defined to mean the absence from duty of an* officer or *employee because of his* illness or injury, exposure to contagious disease, *attendance upon a member of his immediate family seriously ill and requiring the care or attendance of such* officer or *employee*, or death in the immediate family of the officer or employee. . . ." (Italics added.) (Cal. Admin. Code [printed March 22, 1945], tit. 2, div. 1, ch. 1, art. 14.)

Respondents take the position that rule 191, insofar as it attempts to define sick leave to include necessary absence to attend an ill member of the immediate family of an employe, is invalid. We have concluded that rule 191, and, therefore, petitioner's cause for sick leave with pay, are valid.

The provisions of rule 191 here material are the same as were those of rule 14a of the Civil Service Commission adopted June 30, 1932, and effective July 1, 1932. Rule 14a was from time to time amended by the Civil Service Commission and its successor, the State Personnel Board, and was in 1945 renumbered rule 191, but at all times since June 30, 1932, the material (italicized) language of the definition of sick leave has remained unchanged. And, petitioner alleges, "during the entire period since said rule 14a became effective on July 1, 1932, the former Civil Service Commission and the State Personnel Board have uniformly approved such sick leave with pay; . . . during all of said time it has been the uniform administrative practice of all departments affected by said rule 14a to allow such sick leave with pay." Respondents argue that such long-continued, uniform administrative practice is of no significance because, under the civil service laws and article XXIV of the Constitution of this state (in material part hereinafter quoted), the adoption and enforcement of the controverted definition of sick leave are and at all times have been beyond the power of the Civil Service Commission and the State Personnel Board. They rely upon the well-established propositions that "An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment. [Citations.] Moreover, an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. [Citations.]" (*Whitcomb Hotel, Inc.* v. *California Emp. Com.* (1944), 24 Cal.2d 753, 757-758 [151 P.2d 233, 155 A.L.R. 405].)

The pertinent statutory and constitutional provisions, and respondents' contentions as to the effect of each, are as follows:

(1) On June 30, 1932, when the Civil Service Commission adopted its rule 14a, there was no mention of sick leave in the State Civil Service Act (Stats. 1913, ch. 590, p. 1035, as amended; Deering's Gen. Laws, 1931, Act 1400). The commission had only the general power to "Enforce the provisions of this act and prescribe, and enforce suitable rules and regulations for carrying the same into effect" (id., § 5, subd.

Third), and the power to classify and grade positions "to the end that like salaries shall be paid for like duties" (id., § 5, subd. First). Under the 1913 act, respondents contend, the commission had no power to make any rule concerning sick leave.

(2) On November 6, 1934, article XXIV of the California Constitution, an initiative measure, was adopted. Article XXIV (§§ 2, 3) provided for a State Personnel Board to administer and enforce, and to succeed to all powers and duties of other state officers and agencies under, the 1913 Civil Service Act, as amended. It further provided (§ 5, subd. (c)) that "The rules, regulations, [etc.] . . . heretofore *lawfully adopted* by the State officer or agency heretofore administering said laws [relating to civil service] are continued in force and upon the effective date hereof the same shall become the rules, regulations, [etc.] . . . of the board herein created subject to change by said board in the exercise of its powers herein conferred or as may be hereafter provided by law." (Italics added.) In 1937 the 1913 Civil Service Act was repealed and a new State Civil Service Act (Stats. 1937, ch. 753, p. 2085; Deering's Gen. Laws, 1937, Act 1404) was enacted. (This is the act which was in force when the instant controversy arose.) Section 244 of the 1937 act provided, "All rules and regulations and orders pertaining to civil service heretofore *in effect* are continued in force until and unless amended or repealed as provided by this act." (Italics added.) Respondents contend that, since on their view rule 14a was not "lawfully adopted," it was not "continued in force" in 1934 by article XXIV of the Constitution, and was not "in effect" and "continued in force" by section 244 of the 1937 Civil Service Act.

(3) In addition to giving the State Personnel Board general rule-making power (§ 35, subd. (a)), power to "establish and adjust salary ranges . . . on the principle that like salaries shall be paid for comparable duties" (§ 70), and power "In order to secure substantial justice and equality among employees in the State civil service . . . [to] provide by rule for days, hours and conditions of work" (§ 154), the 1937 State Civil Service Act, for the first time in the history of our state civil service laws, contained a provision as to sick leave (§ 151, hereinafter quoted in material part). Respondents contend that the term "sick leave," as used in the 1937 act, has a well and generally understood meaning, namely,

leave granted to one who is himself ill, and that such meaning cannot be enlarged by purported definition or construction by the State Personnel Board.

(4)   At all times here concerned section 350 of the Political Code has provided that "So far as consistent with law the head of each department [the appointing power] may adopt such rules and regulations as may be necessary, to govern the activities of the department." Under this section, respondents urge, the power to grant and regulate sick leave remained with the heads of the respective departments as a matter necessary to the government of the activities of such departments.

We are of the view, for reasons hereinafter elucidated, that rule 191 was valid and operative during all times material to this controversy and, hence, that it is unnecessary to determine whether rule 14a was "lawfully adopted" in 1932, or "continued in force" in 1934 by the constitutional amendment or in 1937 by the provisions of section 244 of the act of that year.

Section 151 of the 1937 act[1] provided that employes shall be entitled to twelve days of sick leave with pay for a calendar year of service (rule 14a had so provided since 1932) "on the submission of satisfactory proof thereof as provided by rule of the board" and that "The board shall, by rule, provide for the granting of additional sick leave, with or without pay, or with reduced pay, or for accumulation of sick leave."

It appears that the Legislature by its enactment of the 1937 State Civil Service Act, regardless of the provisions of section 244, indicated its approval of the prior practice of the Civil Service Commission and of the State Personnel Board in allowing sick leave with pay, for the Legislature in section 151 adopted in material part the board's long-standing provision as to amount of sick leave and stated that the board should (as it had done) enact rules providing for accumula-

[1]Section 151 was amended (Stats. 1939, ch. 898, § 10, p. 2509; Stats. 1943, ch. 20, § 3, p. 137, and ch. 395, § 3, p. 1913) in respects not here material and since July, 1945, when the instant controversy arose, the 1937 Civil Service Act has been repealed (Gov. Code, § 500035; Stats. 1945, ch. 123, § 2) and a new Civil Service Act (Gov. Code, §§ 18500-19765; Stats. 1945, ch. 123, § 1) enacted. The code provisions as to sick leave are now applicable to all state employes; the provisions here pertinent are otherwise unchanged. The sentence of section 151 of the 1937 State Civil Service Act above quoted is now section 18101 of the Government Code.

tion of sick leave and allowance of additional sick leave. Further indicating legislative approval of the previous administrative practice was the statement of the purposes of the 1937 act (§ 1, subd. (c)), which included provision for a "comprehensive personnel system" wherein "The rights and interests of the State civil service employee are given consideration in so far as consistent with the best interests of the State" and "A high morale is developed among State civil service employees by providing adequately for leaves of absence, vacations, and other considerations for the general welfare of said employees."

We speak of the apparent legislative approval of the commission's and board's actions as to sick leave, only as showing the legislative intent when the 1937 provisions as to sick leave were enacted. As above suggested, we are here concerned with the validity of rule 191 in July, 1945—not with the validity of rule 14a on the date of its adoption in 1932, or on the effective date of article XXIV in 1934. (It may be noted in passing that grants of sick leave with pay to state civil service employes from the time of the adoption of rule 14a in 1932 until the effective date of the 1937 Civil Service Act were in any event valid, insofar as concerns at least one phase of respondents' arguments [contention numbered (4), hereinabove set forth], in that all such leaves were approved by the appointing powers.)

Although the State Personnel Board has not formally adopted rule 14a it has by enforcing and amending such rule sufficiently established it as a rule of the board. In 1937, as above related, the board was directed by the Legislature (1937 Civil Service Act, § 151, *supra*) to make rules concerning "sick leave." As respondents admit, neither dictionaries[2] nor law dictionaries[3] nor reported decisions[4] expressly compel the conclusion that "sick leave" in section 151 means

---

[2] "Sick leave," according to Webster's New International Dictionary (2d ed.), is "Leave of absence from duty granted on account of sickness, injury, or disability"; according to Funk & Wagnall's New Standard Dictionary (1944 ed.) it is "Leave of absence issued on the ground of injury or ill health." More supportive of respondents' position is the Oxford English Dictionary (1933 ed.) definition of "sick"; "appropriate or given up to, occupied by one or more persons in a state of illness, as *sick-bay—berth—bungalow—bunk—chamber* . . ., of or pertaining to, connected with, persons suffering from illness, as *sick-allowance—book—club—cookery*, etc." Respondents argue, "Thus the noun to which the word 'sick' is so affixed takes on the aspect of being appropriate to or given up to, or occupied by, or as pertaining to, or connected with a person or persons who are in a state of illness. So a

only leave granted to one who is himself sick and that such meaning cannot be enlarged by the board. Respondents rely upon the statement of Field, in his text on Civil Service Law, that "It is often said that to be entitled to sick leave it is necessary actually to be ill. From this it follows that one who is quarantined but who is not ill himself has no claim to sick leave." (Field, Civil Service Law (1939), p. 149.) Field in turn cites the 1922 opinion of the Comptroller General of the United States (1 Dec. Comp. Gen. 740) that, under the 1920 act reclassifying postal service employes (41 Stats. 1052), "There is no specific provision for leave because of the employee being under quarantine, and, in view of the specific provision in the statute that sick leave shall be granted only upon satisfactory evidence of illness, it must be held that the only leave which may be granted to employees under quarantine but who are not personally ill is chargeable to regular annual leave and not to sick leave."

We cannot agree that the Legislature, when it spoke of "sick leave" in section 151 of the 1937 Civil Service Act, had in mind altering the then well-established administrative practice and narrowing the scope of permissible sick leave allowance to the asserted common, well-known, limited meaning attributed to the term by respondents. The term actually has *two* widely known meanings. As used in civil service administration (and, indeed, in personnel management in private business and industry) it has acquired a technical meaning with which, it may be assumed, the Legislature was familiar. "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law . . ., are to be construed according to such peculiar and appropriate meaning or definition." (Code Civ. Proc., § 16.)

Establishing irrefragably that the term "sick leave" has acquired a widely accepted technical meaning appropriate to civil service administration are the civil service rules of 16

---

sick bay, a sick bungalow, or a sick chamber are appropriate to or occupied by ill persons—not relatives and friends of sick persons."

[3]Anderson's (1893), Ballentine's (1930), Black's (1933), Bouvier's (Rawle's 3d rev., 1914), Bouvier's (Baldwin's Cent. ed., 1940), and Stroud's 1903 and 1913 supp.) law dictionaries do not define the term.

[4]Words and Phrases does not define the term and no case on the subject has been found.

states, cited to us by petitioner, which define "sick leave" substantially as does rule 191 of the California State Personnel Board and which particularly include leave to attend a sick member of the employe's immediate family. In each of these 16 states the definition of "sick leave" was adopted by the agency charged with administering the system under presumed authority of a law which in this respect provided only that such agency had either general rule-making power, or power to make rules governing leave of absence, or power to make rules governing sick leave.[5]

In view of our conclusion that the State Personnel Board, under section 151 of the 1937 Civil Service Act, had power to define sick leave as it has done, the following well-established propositions on which petitioner relies are applicable: "The construction of a statute by the officials charged with its administration must be given great weight, for their

[5]Ala. Gen. Acts, 1939, No. 58, §§ 6, 9, subd. (b); Rules of State Personnel Board, rev. Oct., 1943, Rule XI, § 2, subd. (b).

Conn. Merit System Act, §§ 648e, 680e; State Civil Service Rule II, am. June 26, 1942.

Fla. Merit System Regulations, art. XIV; Fla. Industrial Commission Regulation No. 43, effective July 1, 1945.

Idaho Code, Ann., 1932, § 49-206; Merit System Council Regulation II, § 4.

Ill. Smith-Hurd Ann. Stats., ch. 24½, § 42; Merit System Council Rules, art. XIV; Public Aid Commission, Bulletin 67, June 21, 1944, Rule I-B-1.

Ky. Rev. Stats., §§ 42.110-42.150; Personnel Rules and Regulations, Rule XI, § 3.

La. Stats., 1940, Act 172; Department of State Civil Service Rule XI, § 4.

Me. Rev. Stats., 1944, ch. 59, § 4, subd. L; State Personnel Board Rule XI, part 2.

Mich. Const., art. VI, § 22; Civil Service Commission Rule XII. Mich. Pub. Acts, 1941, No. 370; Civil Service Commission of Wayne County Rule 15, § 2 (b), effective Jan. 1, 1944.

Minn. Laws, 1939, ch. 441, § 6, subd. (a), and § 22, subd. (2); Civil Service Rules, § 13.8.

Neb. Sess. Laws, 1945, ch. 238, § 14; Regulations for a Merit System of Personnel Administration, art. XIV.

No. Car. Gen. Stats., 1943, § 126-2; Merit System Rule, May, 1941, art. XIV; Regulation on Attendance and Leave for County Welfare Departments, § 4.

So. Car. Civ. Code, 1942, § 4996-2; Rule for Merit System of Personnel Administration, rev. July 1, 1945, art. XIV; Administrative Regulations on Attendance and Leave, § 2, par. 2 (a).

Tenn. Civ. Service Act, Pub. Acts, 1939, ch. 221, §§ 6, 28; Rules and Regulations for Administering the Civil Service Act, Department of Personnel Bulletin 3, 1940, § 15.5.

Wisc. Civil Service Law, § 16.275; Civil Service Rule XV, § 5.

Wyo. Laws, 1937, ch. 88, §§ 3, 5: 1940 Wyo. Supp., §§ 103-1603, 103-1605; State Department of Public Welfare Rules, art. XIV.

'substantially contemporaneous expressions of opinion are highly relevant and material evidence of the probable general understanding of the times and of the opinions of men who probably were active in the drafting of the statute.' [Citations.] When an administrative interpretation is of long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation. [Citations.]'' (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944), *supra,* 24 Cal.2d 753, 756-757.)

█ Moreover, with particular reference to the administration of civil service, it is the policy of the courts of this state that ''Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.'' (*Maxwell* v. *Civil Service Com.* (1915), 169 Cal. 336, 339 [146 P. 869, 871]; *Pratt* v. *Rosenthal* (1919), 181 Cal. 158, 164 [183 P. 542]; *Mann* v. *Tracy* (1921), 185 Cal. 272, 274 [196 P. 484]; *Haub* v. *Tuttle* (1926), 80 Cal. App. 561, 569-570 [251 P. 925, 928]; *Mitchell* v. *McKevitt* (1932), 128 Cal.App. 458, 465 [17 P.2d 789].) █ ''To narrowly proscribe the rule-making power of the [board] . . . would be to overlook one of the fundamental purposes of the policy of delegation of powers and to deprive the Legislature and the people of the state of one of the major benefits thereof. The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others. The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect, and provision by the Legislature that such rules and regulations shall have the force, effect, and sanction of law does not violate the constitutional inhibition against delegating the legislative function. [Citations.]'' (*First Industrial Loan Co.* v. *Daugherty* (1945), 26 Cal.2d 545, 549 [159 P.2d 921].)

█ That the controverted rule is a reasonable one to carry out the purposes of the Civil Service Act is clear. Greater

uniformity as to conditions of work within the various classifications and grades of positions is promoted by a uniform policy as to leave with pay rather than by leaving the matter to the varying discretions of the heads of departments. The granting of ''sick leave'' with pay under the circumstances enumerated in rule 191 tends to promote the efficiency, morale, and general welfare of the employe to whom such leave is granted. Moreover, allowance of leave with pay in such circumstances is a reasonable means of promoting efficiency among other state personnel. Where a member of an employe's immediate family has just died, or is seriously ill and nursing care cannot be obtained, not only might the employe himself be unable to work efficiently, but the impact of his emotional state upon, and the natural sympathies of, fellow employes might reflect upon their work. Allowance of leave with pay to one who has been exposed to contagious disease protects primarily, not such employe himself, but fellow employes who might otherwise be exposed. It thus appears that if the board had desired to so express its rules it could properly have provided for allowance of ''sick leave with pay'' to employes personally ill and for allowance of ''leave of absence with pay'' in the other circumstances enumerated in rule 191.[6] When the matter is considered in this way the question becomes: Is the board's action invalid because it has said, ''Sick leave is hereby defined to mean . . .,'' instead of, ''Employes shall be entitled to leave on the grounds . . .''?

Furthermore, it will be remembered, the Legislature appears to have agreed with the board's consistent and long-continued policy as to sick leave. The fact that the Legislature when in 1937 it enacted section 151 of the State Civil Service Act, when in 1939 and (twice) in 1943 it amended such section, and when in 1945 (after the validity of the board's definition had been challenged in *Hatch* v. *Ward* (1946), *post*, p. 883 [168 P.2d 22]), it enacted the same language into section 18101 of the Government Code, did not define or limit the term ''sick leave,'' indicates approval of the board's definition.

---

[6]In Colorado, for example, the Rules and Regulations for Administration of the Merit System in the County Department of Public Welfare, as amended January 1, 1945, provide for sick leave and (§ 8) for ''Other approved leave (Personal). (a) 3 days for death in the family . . . (b) 3 days for illness in family . . ,''

■ Relative to respondents' contention that the State Personnel Board was powerless to adopt rule 191 in that by virtue of section 350 of the Political Code the power to grant and regulate sick leave was lodged exclusively with the heads of the several departments, we are satisfied that such section cannot properly be held effective to limit the power otherwise conferred on the board by article XXIV of the Constitution and the 1937 Civil Service Act. (See language of article XXIV and of the 1937 act quoted *ante*.)

For the reasons above stated we have concluded that the definition of sick leave in rule 191 of the State Personnel Board is authorized and valid.

Let a peremptory writ of mandate issue as prayed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.