[Civ. No. 34599. Second Dist., Div. Two. Apr. 1, 1970.]

BURVAL R. BAKER et al., Plaintiffs and Appellants, v.
GUY W. WADSWORTH et al., Defendants and Respondents.

### COUNSEL

Richman & Garrett for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Gilmore Tillman, Chief Assistant City Attorney, Bourke Jones, Jack L. Wells, Ralph Guy Wesson, Assistant City Attorneys, and Gilbert W. Lee, Deputy City Attorney, for Defendants and Respondents.

### OPINION

**WRIGHT, J.**—Appellants, petitioners below, are three men who from time to time have been employed by the Department of Water and Power of the City of Los Angeles (hereinafter called the Department). Respondents

are the Board of Civil Service Commissioners of the City of Los Angeles (hereinafter called the Civil Service Commission), the Commissioners of the Department of Water and Power of the City of Los Angeles (hereinafter called the Water and Power Commission), and the City of Los Angeles.

On October 12, 1965, appellants' employment with the Department was terminated pursuant to a rule of the Civil Service Commission. Appellants thereafter requested and received a hearing before the Civil Service Commission, and on November 19, 1965, the Commission upheld appellants' termination. At the same hearing the Commission granted appellants' requests for restoration to certain lists of eligibles, but due to the termination, appellants lost certain seniority rights.

Following numerous subsequent hearings before both the Civil Service Commission and the Water and Power Commission, appellants petitioned the trial court for an alternative writ of mandate. The writ sought to order respondents to vacate and set aside the notice of termination and to reinstate appellants to full seniority.

On October 23, 1968, the petition for writ of mandate was denied and this appeal followed.

### STATEMENT OF FACTS

The following are the relevant facts as found by the trial court.

At the time this action arose appellants were employed as boilermakers by the Department at the Haynes Steam Plant. Appellants were and have been members of Boilermakers Union Local 92 (hereinafter called the Union).

On Monday, October 4, 1965, the Union established a picket line about the Haynes Steam Plant in a concerted effort to shut down all construction work on certain units of the plant. Several contractors had been engaged in construction work for the Department at Haynes Steam Plant prior to October 4, 1965, and the labor dispute was between these contractors and the Union. Appellants knew that no labor dispute existed between either the Union and the Department or between the Department and its employees. Nevertheless, upon learning of the picket line, appellants refused to continue working and left the premises of Haynes Steam Plant on October 4, 1965.

Thereafter members of the Union picket line asserted that construction employees of the Department, including appellants, could not enter Haynes Steam Plant without defying the picket line. As a result of the picketing more than 400 employees of the Department, including appellants, refused to enter the plant to report for work.

At all times during their refusal to work, appellants were aware of the existence of rule 7.2 of the Civil Service Commission. Rule 7.2 provides as follows: "An employee who is absent without a valid leave of absence for seven consecutive calendar days shall be deemed to have abandoned his position and to have resigned from the service unless within thirty calendar days from the last day he worked or the last day he was on a valid leave of absence, he proves to the satisfaction of the Board that such failure was excusable. However, nothing in this section shall prevent an appointing authority from suspending or discharging an employee on account of unauthorized absence."

Department supervisors informed officers of the Union of the possible application of rule 7.2 to Department employees who were prevented from reporting for work by the Union picket line. They further informed the Union that the picket line was, as to the Department, a secondary boycott and strike which was unlawful.

On Thursday, October 7, 1965, officers of the Union informed the Department that if the Department opened a separate gate at the plant and permitted only Department employees to pass through the gate, the gate would not be picketed. They further informed the Department that the gate would be permitted to open on Monday, October 11, 1965. On Friday, October 8, 1965, the Department announced to its employees that a separate gate would be opened for their exclusive use at the steam plant.

On Monday, October 11, 1965, the separate gate was opened and was not picketed. With the exception of five employees, including appellants, all Department employees returned to work. Although appellants entered the premises of Haynes Steam Plant, they did not report for duty. They demanded to be assigned to work at another location and then refused to work not only at Haynes Steam Plant but also at any other location of the Department. Appellants based their refusal upon an alleged agreement between William Myers, then a member of the Water and Power Commission, and Mr. Gillespie, business representative of the Union, namely, that the Union would not picket the separate gate on the condition that appellants would be transferred to a location other than Haynes Steam Plant.

Appellants were expressly warned that their refusal to work would constitute abandonment of their positions under rule 7.2 of the Civil Service Commission. Nevertheless, appellants refused to work, withdrew their requests for vacations, and left the premises of the plant.

The following day, October 12, 1965, appellants and two other employees of the Department were terminated pursuant to rule 7.2. A notice

setting forth the fact of termination in accordance with said rule was served on each of the appellants and was filed with the Civil Service Commission.

Subsequent to October 11, 1965, the general manager and chief engineer of the Department approved requests for retroactive leaves of absence for employees who had been absent from work during the week of October 4 to October 8, 1965, but only for those who returned to work on October 11, 1965. No requests for leaves of absence, either with or without pay, were approved for any employee who did not report for duty on October 11, 1965 (except for persons who reported absences for reasons of illness or previously approved requests for leaves of absence).

By communication dated October 14, 1965, and in accordance with rule 7.2, appellants requested the Civil Service Commission to find that their absence from work was excusable. After deferring action on October 22, 1965, and again on November 5, 1965, the Commission held a hearing on appellants' requests on November 19, 1965. Appellants were present at the hearing and were represented therein by Mr. Gillespie, the Union's business representative. After hearing and reviewing the evidence presented, the Commission denied appellants' requests and found that their absences were not excusable. The trial court concluded that this finding was supported by substantial evidence.

At the same hearing, the Commission granted appellants' requests for restoration to certain eligible lists under rule 9 of the Civil Service Commission. In accordance with rules 1.34 and 7.8 of the Civil Service Commission, the termination of appellants resulted in the loss of seniority held by each of them prior to termination for purposes of layoff in the event appellants were laid off and re-employed by the Department.

Appellants were subsequently hired from eligible lists in various capacities and as boilermakers. As of the date of the judgment below (October 23, 1968), three other Department employees had been appointed as boilermakers and in the event of restoration of seniority to appellants, at least two of these employees would be replaced by appellants.

On March 4, 1966, the Civil Service Commission denied a request for reconsideration of its prior ruling on the ground that it lacked jurisdiction.

On March 14, 1966, Herbert M. Ansell, attorney for appellants, requested a hearing by the Department, and on September 16, 1966, he presented an argument to the Water and Power Commission. On January 12, 1967, the office of the city attorney filed an opinion with the Water and Power Commission stating that said commission had no power to grant the relief requested by appellants. More correspondence followed and on

May 18, 1967, the Water and Power Commission met again to hear further arguments by appellants, Mr. Gillespie and Mr. Ansell.

On September 15, 1967, appellants filed a request with the Civil Service Commission for retroactive leave of absence for the period they were absent from work in October 1965. The Commission denied appellants' request on January 19, 1968, on the ground that it lacked jurisdiction.

Appellants petitioned the trial court for an alternative writ of mandate on May 31, 1968. The alternative writ was filed June 21, 1968 and the writ was denied October 23, 1968.

Other facts relating solely to the issues of whether appellants were guilty of laches and whether respondents should be estopped to raise the defense of laches, will not be set forth in that we deem it unnecessary to discuss those issues.

## CONTENTIONS ON APPEAL

Appellants contend as follows:

(1) Rule 7.2 of the Civil Service Commission is in conflict with the charter of the City of Los Angeles and therefore void, and furthermore that the Commission had no legislative authority to adopt the rule;

(2) They were denied procedural due process of law in connection with their hearing before the Civil Service Commission on November 19, 1965;

(3) They were denied substantive due process of law in that they were intentionally discriminated against in the application of rule 7.2;

(4) The agreement between Dr. Myers and Mr. Gillespie was binding on the Department and is presently enforceable; and

(5) They were not guilty of laches and that in any event respondents should be estopped to raise the defense of laches.

In their opening statement, appellants say there is a question of law as to whether the findings of the trial court were supported by substantial evidence. Appellants, however, have failed to support by any reference to the record wherein the findings below were not supported by the facts of the case. As stated in *Haynes* v. *Gwynn*, 248 Cal.App.2d 149, 151 [56 Cal.Rptr. 82], " '. . . "The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue. Unless this is done, the error assigned is deemed to be waived. [Citation.] It is incumbent upon appellants to state

fully, with transcript references, the evidence which is claimed to be insufficient to support the findings. . . . [Citations.]" ' " ▉ Aside from not showing why the evidence is insufficient, appellants have not even pointed out what findings they are objecting to. We therefore deem this issue to have been waived. (*Haynes* v. *Gwynn, supra; Estate of Straisinger* 247 Cal.App.2d 574, 578, fn. 1 [56 Cal.Rptr. 750].)

## RULE 7.2 OF THE CIVIL SERVICE COMMISSION

Appellants urge two points in their attack upon the validity of rule 7.2: (1) that there was no legislative authority for the Commission to adopt the rule, and (2) that the rule is necessarily in conflict with section 112 of the Charter of the City of Los Angeles.

▉ Appellants pose the question "Where does the legislative authority appear for the adoption of rule 7.2?" The answer is that broad rule-making powers are conferred on the Civil Service Commission by section 101 of the Charter of the City of Los Angeles. That section provides as follows: "Said board [the Civil Service Commission] shall from time to time make rules to carry out the purposes of this article [Civil Service] and for the examinations and appointments in accordance with its provisions." Rule 7.2 was enacted by the Commission pursuant to this section of the charter. Although authority to adopt the rule was not expressly conferred in so many words by the charter, the authority is implied in the broad discretionary power of the Commission to administer and enforce the civil service laws. (See *Ferdig* v. *State Personnel Board,* 71 Cal.2d 96, 104 [77 Cal. Rptr. 224, 453 P.2d 728].) The Commission was thus empowered to adopt reasonable rules and regulations that it deemed necessary to the efficient exercise of the powers expressly granted by the charter. (See *California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 302-303 [140 P.2d 657, 147 A.L.R. 1028].) The provisions of the charter were not intended to cover the entire civil service system, but only to establish policies and standards to be carried out in detail by the Commission through its rule-making power. (See *Waters* v. *Civil Service Board,* 133 Cal.App.2d 733, 736 [284 P.2d 919].) We think it is beyond dispute that the Civil Service Commission had the authority to adopt a rule providing for termination of an employee for the abandonment of his position.

▉ The question remains, however, whether section 112 of the charter[1]

---

[1]Section 112 of the Charter of the City of Los Angeles provides in pertinent part as follows:

"Sec. 112. (a) Any board or officer having the power of appointment of officers, members and employees in any department of the government of the city shall have the power to remove, discharge or suspend any officer, member or employee of such

has provided such a complete scheme for the severance of a civil service employee that the provisions of rule 7.2 are necessarily in conflict with the charter. Appellants' first contention in this regard is that section 112(a) establishes the broad, all-inclusive rule, and since section 112(c) establishes the only exception, application of the doctrine of *expressio unius est exclusio alterus* necessitates a finding that no other exceptions to section 112(a) were contemplated. Whatever usefulness that doctrine has as a guide for statutory construction, it is inapplicable to the instant case because of the following distinction: section 112 of the charter deals with discharge or removal for cause, while rule 7.2 of the Civil Service Commission deals with abandonment or constructive resignation.

The New York case of *Dunn* v. *Simon,* 16 App.Div.2d 719 [226 N.Y. S.2d 812], is relevant here in regard to this distinction. There the Supreme Court, Appellate Division, did not find any conflict between a civil service rule which provided for constructive resignation after a 10-day period of unauthorized absence, and a statute which provided for removal and other disciplinary action only after a hearing upon stated charges. The civil service rule and statute in that case are very similar to Civil Service rule 7.2 and charter section 112(a) in the instant case.[2] In reaching their

---

department; but no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the Board of Civil Service Commissioners, with certification that a copy of such statement has been served upon the person so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence if he cannot be found. Upon such filing such removal, discharge or suspension shall take effect. Within fifteen days after such statement shall have been filed, the said board, upon its own motion, may, or upon written application of the person so removed, discharged or suspended, filed with said board within five days after service upon him of such statement, shall proceed to investigate the grounds for such removal, discharge or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty. The board with the consent of the appointing authority may also order a reduction in the length of the suspension, or substitution of a suspension for a removal or discharge, if the board finds, in writing, that such action is warranted.

. . . (c) The provisions of subsection (a) hereof shall not apply to any suspension of five working days or less in any twelve-month period for personal delinquency. The reasons stated in writing for any such suspension shall be furnished to the suspended employee and promptly filed with the board. Any such suspension which results in an employee having a total suspended time by reason of the exercise of authority under this subsection in excess of five working days in any twelve-month period shall be subject to all of the provisions of subsection (a) hereof."

[2]Subdivision 4 of Rule 37 of the Rules of Civil Service, [4 NYCRR 5.3.] McKinney's Consol. Laws, Book 9 Appendix, provides in pertinent part as follows:

"4. Unauthorized absence; when deemed a resignation. When an employee is absent

conclusion, the court stated, "Nor do we perceive the inconsistency between the rule and statute envisaged by Special Term. Each was designed to provide a separate and distinct method within the State Civil Service Complex for the severance of employment, the former by self-abdication and the latter by compulsion after a hearing upon charges of incompetency or misconduct." (*Dunn* v. *Simon, supra,* at p. 814.) That reasoning applies with equal force here.

■ Appellants also contend that rule 7.2 conflicts with charter section 112 because of procedural differences between the two, namely, that section 112 places the burden of proof on the appointing authority while rule 7.2 places the burden of proof on the employee. As previously stated, when an employee is terminated pursuant to rule 7.2, he has not been discharged for cause but rather is deemed to have abandoned or constructively resigned his position. It is this distinction which accounts for the procedural differences between a hearing under rule 7.2 and a hearing under charter section 112. The sole issue in a hearing under rule 7.2 is whether an employee's unauthorized absence is excusable or justified. The burden of proof is properly on the employee because he is the one who knows the reasons for his absence. ■ Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, it may be necessary to place the burden on the party possessing that knowledge. (*Morris* v. *Williams,* 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].) Rule 7.2 is not unique in this regard. Government Code section 19503 and Education Code section 24311 also place the burden on the employee to explain an unauthorized absence to the satisfaction of the State Personnel Board.

We thus perceive no conflict between rule 7.2 and section 112 of the

without leave and without an explanation therefor for a period of ten work days, such absence shall be deemed to constitute a resignation effective on the date of the commencement of such absence. The failure of an employee to return to his position within ten work days following the expiration of a leave of absence, or extension thereof, without submitting an explanation therefor within such ten-day period, shall constitute a resignation which, for purposes of determining eligibility for reinstatement, shall be deemed to be effective as of the date of the commencement of such leave of absence. Nothing herein shall be deemed to excuse the unauthorized absence of an employee or his failure to return to his position upon the expiration of an authorized leave of absence, and any such failure may be regarded as misconduct in an appropriate disciplinary proceeding."

Section 75 of the Civil Service Law, so far as applicable, provides:

"Removal and other disciplinary action.

"1. Removal or disciplinary action. A person described in paragraph (a) or paragraph (b) of this subdivision shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.

"(a) A person holding a position by permanent appointment in the competitive class of the classified civil service."

charter. Since appellants have made no argument that rule 7.2 is either unreasonable or arbitrary, we see no reason to deny its validity. (See *Nelson* v. *Dean,* 27 Cal.2d 873, 881 [168 P.2d 16, 168 A.L.R. 467].)

## PROCEDURAL DUE PROCESS

Appellants contend they were deprived of procedural due process of law in connection with their hearing before the Civil Service Commission on November 19, 1965. In their argument, however, appellants have made no attempt to point out either what rights were denied or how they were denied. They merely assert that a review of the hearing reveals a "wholesale violation" of procedural due process standards. We have examined the transcript of that hearing and have found no support whatever for appellants' contention.

It must first be pointed out that at all times during their absence from work, appellants were aware of rule 7.2 and its impact. Furthermore, on Monday, October 11, 1965, the seventh consecutive calendar day of their absence, they were personally warned that their refusal to report for duty on that day would constitute abandonment of their positions. Appellants can thus make no claim that they were unaware of the consequences of their actions.

The fundamental due process requirements of a fair and impartial hearing are reasonable notice and a reasonable opportunity to be heard. (*Anderson Nat. Bank.* v. *Luckett,* 321 U.S. 233 [88 L.Ed. 692, 64 S.Ct. 599, 151 A.L.R. 824]; *Drummey* v. *State Board of Funeral Directors & Embalmers,* 13 Cal.2d 75, 80-81 [87 P.2d 848].) Both requirements were clearly met in this case. On October 12, 1965, in accordance with rule 7.2, a notice of termination was served on each appellant and filed with the Civil Service Commission. Appellants acknowledged receipt of the notices. Appellants requested a hearing on October 14, 1965, and the Commission met on October 22, 1965, to consider their claims. After twice being deferred, the hearing was held on November 19, 1965. Appellants and their representative, Mr. Gillespie, were all present at the hearing. Thus there is no doubt that the requirement of reasonable notice was satisfied. (See 3 Witkin, Summary of Cal. Law (1960) § 116, p. 1919.)

Although the point is not discussed in their argument, in their statement of facts appellants claim that the Civil Service Commission took its action without hearing from any of the appellants, and also that one of the appellants was prevented from objecting to the matter being voted upon. The implications of these statements are clearly misleading. The following excerpt from the transcript of the hearing demonstrates that appellants were

in fact given an opportunity to be heard. "PRESIDENT MALTZ: . . . Is Mr. Baker, Mr. Reinhold, and Mr. Weiderholdt [appellants] with us this morning? VOICE FROM AUDIENCE: Yes. PRESIDENT MALTZ: Would you gentlemen stand up, please. Have you any comments concerning this recommendation that has been given to us by our General Manager? MR. GILLESPIE: I am Mr. Gillespie, Business Representative, Boilermakers Union, Local No. 92." Mr. Gillespie then proceeded to present appellants' defense, stating to the Commission the reasons why appellants refused to return to work. Later in the hearing, Mr. Gillespie answered questions posed by a member of the Commission. Appellants were thus given an opportunity to be heard, and if they felt Mr. Gillespie did not adequately present their defense, it was incumbent upon them to say so. (Cf. *McGinn* v. *Board of Health,* 113 Cal.App. 228, 231 [298 P. 118].) The record does not show that they were foreclosed of that opportunity. As for appellants' statement that one of them was prevented from objecting to the matter being voted upon, the record clearly shows that the remark was made *after* the Commission had already voted to deny appellants' request. Since the fundamental requirements of due process were satisfied (*Anderson Nat. Bank* v. *Luckett, supra; Drummey* v. *Board of Funeral Directors, supra*), and since appellants have not referred to any particular prejudicial error or abuse of discretion in the conduct of the hearing, we must reject their contention.

### SUBSTANTIVE DUE PROCESS

Appellants next contend that they were denied substantive due process of law in that they were intentionally discriminated against in the application of rule 7.2. They claim that "wholesale vacations with pay" were given to the other 400 employees of the Department to allow them to escape the impact of rule 7.2, whereas appellants were "singled out for harsh treatment" and were denied protection from the rule. Such a statement has no foundation in the facts of the case, because those employees who returned to work on Monday, October 11, 1965, did not need protection from the rule. In addition, there was a rational basis for granting retroactive leaves of absence for those who returned to work that day. (See *Social Workers Union Local 535* v. *County of Los Angeles,* 270 Cal.App.2d 65, 78 [75 Cal.Rptr. 566].)

Monday, October 11, 1965, was the crucial day for purposes of rule 7.2. Those employees who returned to work that day avoided application of the rule. For those who did not, Monday marked the seventh consecutive calendar day in which they were absent from work without a valid leave of absence. Five employees, including appellants, did not report for duty on Monday, and all five were thereafter terminated in accordance with the

rule. Thus no employee who returned to work on Monday needed a leave of absence to avoid impact of rule 7.2.

Mr. Goss, Department executive, in testimony given before the Water and Power Commission, explained the reason for granting retroactive leaves of absence for those employees who returned to work on October 11, 1965.

"MR. GOSS: Now, I would also like to comment on this vacation thing because this, I think, is a matter of some interest to the Board. After the inception of it [the strike], in a discussion at the System Head level, it was decided that vacations would not be granted to those people who were staying away from work because they did not wish to come through the picket line. However, on the 11th *for those people who came to work on the 11th and therefore qualified themselves as not being absent for the full seven days,* a vacation was granted for two reasons, one is to save the lost pay of these people that they lost for the days they were off work, and, secondly, this was an advantage to the department because we gained back the man-hours that had been lost since we would have to give the vacation time at a later time. So, it was given only to those employees who came to work on the 11th. These three employees [appellants] and two other employees who are not represented here today did not come to work on the 11th. These three employees came to the job but they did not work." (Italics added.) This was not a situation, as appellants imply, in which all Department employees were subject to termination and relief was granted to some while others were singled out for reprisals.

### AGREEMENT BETWEEN THE DEPARTMENT AND THE UNION

Appellants contend there was an agreement between Commissioner Myers and Mr. Gillespie whereby the Union would not picket the separate gate on the condition that appellants would be transferred to another job location. Appellants claim this agreement was binding upon the Department and that it is presently enforceable. Elaborate arguments have been presented by both parties on a myriad of issues surrounding appellants' contention: whether Commissioner Myers had the authority to make such an agreement; whether the Union and appellants had a right to rely on his representations; whether the Department is estopped to deny Commissioner Myers' authority; whether public employees have the right to strike; and whether the union had a right to picket a separate gate reserved exclusively for the employees of a neutral employer. We appreciate the diligent efforts of counsel on both sides, but we feel that discussion of these arguments is not necessary to a resolution of this issue. At the hearing on November 19, 1965, the sole issue before the Civil

Service Commission was whether appellants' absence from work was excusable. Evidence of the purported Myers-Gillespie agreement, along with other evidence introduced at the hearing, was relevant only on this question. Appellants attempted to show that failure of the agreement was the cause of their absence and eventual termination. Other evidence, however, indicated that despite the failure of any agreement, appellants could have returned to work but chose not to do so for personal reasons. Thus assuming there was an agreement and even assuming that it was valid and binding, it was but one factor to be considered by the Commission in making its determination.

After weighing the evidence, the Commission found that the absences were not excusable, and the trial court concluded that this finding was supported by substantial evidence. (See *Dumas* v. *City of Sunnyvale,* 231 Cal.App.2d 796, 800 [42 Cal.Rptr. 302].) Appellants have not challenged this finding, but since they have raised the issue of the agreement, and since evidence on that issue was relevant as to whether their absence was excusable, we will deem appellants to have objected to that finding of the trial court. ▪ In such a situation, it is not the function of this court to reweigh the evidence, but merely to determine whether there was substantial evidence to support the finding of the trial court. (*Ballf* v. *Public Welfare Department,* 151 Cal.App.2d 784, 788-789 [312 P.2d 360].)

▪ There was ample evidence that appellants could have returned to work but that they voluntarily decided not to do so. It was implicit from Mr. Gillespie's testimony that appellants would not work at Haynes Steam Plant because as a matter of principle they would be violating their loyalty to the Union. (It must be remembered that no labor dispute existed between the Union and the Department and that Department employees were not on strike.) Statements from appellants themselves made it clear that Department superintendents wanted them to return to work since they had already crossed the picket line, but that they chose not to report for duty for fear of arousing the antagonism of other Union members. A statement obtained by the Commission from a plant superintendent indicated that appellants were unwilling to work as boilermakers at any location of the Department and for that reason the Department could take no further action in assigning them to other positions. There was no evidence whatsoever that the Department refused to allow them to work.

In light of the above, we must hold that the evidence was sufficient to support the finding that appellants' absences were not excusable.

Since this appeal is being affirmed on the merits of the case, it is not

necessary to discuss whether appellants were guilty of laches and whether respondents are estopped to raise the defense of laches.

The judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.