Opinion
 

 NOTT, J.
 

 Appellant, Los Angeles Police Officer Miles Taylor, appeals from the trial court’s denial of his petition for writ of administrative mandate
 
 *613
 
 under Code of Civil Procedure section 1094.5, in which he sought to overturn respondent City of Los Angeles’ imposition of a 22-day disciplinary suspension under amended charges. We are asked to determine whether the board of rights manual, which allows amendment of a charge to conform to proof, conflicts with the Charter of the City of Los Angeles. We conclude it does not. The amended charges against appellant, therefore, did not fall outside the one-year statute of limitations period.
 

 Facts and Procedural Background
 

 The Underlying Arrest
 

 On October 16, 1990, Lopez, Medina, Perez and Villaraz were arrested in the course of a Los Angeles Police Department “buy-bust” drug operation, involving 16 plainclothes and undercover officers. After the undercover officers, including Officers Watts and Sherwood, made their buys, appellant and other officers moved in. As the officers converged, Lopez ran and crashed into a car, hit his head on the hood, rolled over the hood, and fell off the other side. Appellant arrested Perez and Villaraz. Officer Orozco arrested Medina, and Officer Convey arrested Lopez.
 

 During Lopez’s first trial, which commenced in January 1991, officers testified that prebooking Polaroid photographs taken in the field are used by undercover officers for identification purposes and to aid officers in their future recollection of the case. The Polaroids are kept in the arrestees’ packages, which are maintained by the undercover officer participating in the arrest. In the course of the trial, Officer Orozco testified that he did not notice any bruises on Lopez at the time of his arrest and Officer Watts testified that he could not locate the prebooking Polaroid of Lopez. Lopez’s counsel then introduced photographs taken when Lopez was booked which showed injuries on Lopez’s forehead. Lopez’s first trial resulted in a hung jury.
 

 In April 1991, during Lopez’s second trial, both Officers Sherwood and Watts testified that a prebooking Polaroid had been taken of the arrested suspects, but they did not know what happened to it. Subsequently, appellant was called to the stand and questioned about the number of Polaroid pictures taken of each person arrested. He stated that he thought only one picture was taken, but he did not know what happened to it. After he finished testifying, he left the courtroom and returned to the station. Detective Sheehan testified last, stating that he had not actually seen a Polaroid of Lopez, but that Polaroids taken of the suspects should not have been destroyed. The district attorney asked him to go back to the station to retrieve the Polaroid during . the lunch break, and he agreed to do so.
 

 
 *614
 
 Detective Sheehan asked police service representative Joanne Bryant, who worked for the information liaison officer in the narcotics division, to leave a message for the undercover officers to the effect that he needed the Polaroid of Lopez that afternoon. Officer Sherwood retrieved the case package and left it on his own desk before he, Watts, and appellant went to lunch. On the front of the package was a Polaroid depicting three or four officers and Perez, Lopez and Medina. When they returned from lunch, appellant asked Officer Sherwood for the Polaroid and a cigarette lighter. Appellant then burned the Polaroid.
 

 Officer Watts smelled the burning Polaroid, asked Officer Sherwood about the smell, and discovered the burnt Polaroid. He saw the message left by Detective Sheehan on Joanne Bryant’s desk and told Detective Sheehan that the Polaroid had been destroyed, showing him the charred remains. Upon being informed by Detective Sheehan that the Polaroid had been destroyed, the district attorney moved for dismissal of the criminal proceedings against Lopez.
 

 The Administrative Hearing
 

 Appellant was charged as follows: “On April 4, 1991, at Van Nuys Station, you while on-duty, destroyed a public record when you burned a Polaroid of Ramiro Lopez.”
 

 At the administrative hearing, appellant stated that he did not testify in the first trial, nor did he know that whether Lopez had been beaten was an issue, or that the existence of the Polaroid was important. Appellant claimed that he was not aware at the time he burned the Polaroid that a request had been made in court for a prebooking Polaroid of Lopez. Although he knew that several officers and suspects were in the Polaroid, he was not sure whether Lopez was pictured. Appellant testified that he burned the Polaroid in “effigy,” to celebrate the end of the trial.
 

 After the case was submitted for decision to the board of rights,
 
 [1]
 
 the hearing panel recommended amending the charging document to read: “On April 4, 1991, at Van Nuys Station, you, while on-duty, destroyed a photograph that you knew or reasonably should have known had a bearing on a
 
 *615
 
 pending criminal case.” Appellant objected on the basis that the amendment brought the charge outside the one-year statute of limitations period, but he did not ask for a continuance. After receiving advice from the city attorney, the board of rights overruled the objection.
 

 Appellant was found guilty of the amended charge and suspended without pay for 22 working days.
 

 Discussion
 

 The central issue here is whether the board of rights manual, promulgated by the Los Angeles Police Department, can, by its terms, allow amendment to a charge to conform to proof, where the charter itself does not so provide.
 

 Respondent is a charter city, governed by article XI, section 5 of the California Constitution.
 
 [2]
 
 As appellant points out, no mention is made in the charter of the power of the board of rights to amend the charge. Section 202 of the Los Angeles City Charter (the Charter) provides, in pertinent part, that “(1) [t]he rights of a tenured officer of the Police Department, except the Chief of Police, to hold his or her office or position and to the compensation attached to such office or position is hereby declared to be a substantial property right of which he or she shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided. No tenured officer of the Department shall be suspended, demoted in rank, suspended and demoted in rank, removed, or otherwise separated from the service of the Department (other than by resignation), except for good and sufficient cause shown upon a finding of ‘guilty’ of the specific charge or charges
 
 *616
 
 assigned as cause or causes therefor after a full, fair, and impartial hearing before a Board of Rights . . .
 

 On the other hand, section 345.30 of the operative board of rights manual
 
 [3]
 
 states that “[i]f during the course of a hearing evidence is disclosed against the accused in proof of any offense relative to the original charges but not included herein, or if it is determined that a material fact has been improperly stated on the original charge, the Board of Rights should request the Chief of Police to amend such charges so as to include specifications embodying such offense, which will then become a part of said original charges. The accused must be allowed reasonable opportunity, if needed and desired, to prepare a defense for such amended charges, and the hearing shall be continued for that purpose.”
 

 Respondent maintains that
 
 Riveros
 
 v.
 
 City of Los Angeles
 
 (1996) 41 Cal.App.4th 1342 [49 Cal.Rptr.2d 238] supports its contention that the board of rights has the ability to amend charges under the Charter. There, Division Five of this appellate district found that the board of civil service commissioners had the right to fix the probationary period of a police officer, based on Charter section 109, subdivision (c), which provides that a probationary period not exceeding 18 months is “to be fixed by said rules.” In that case, the police department’s notice of termination form included a section captioned “ ‘Extension of Probation Period’ ” which read: “ ‘Civil Service Commission Rule 5.26 states that in the event a probationary officer is absent in excess of seven calendar days in the aggregate, except for vacation or time off for overtime, [the] probationary . . . period may be extended as a result of absences relating to this matter.’ ” (41 Cal.App.4th at pp. 1351-1352, italics omitted.) Division Five explained that “[t]he charter provisions were not intended to cover the entire civil service system but only to establish policies and standards to be carried out in detail by the Board through it[s] rules-making power. As such, the Board was empowered to adopt reasonable rules and regulations that it deemed necessary to the efficient exercise of its powers expressly granted by the charter.” It concluded, “Although authority to exclude lengthy absences from the prescribed probationary period was not expressly conferred by the charter, the authority is implied in the Board’s broad discretionary power under charter sections 101 and 109, subdivision (c) to administer and enforce the civil service laws and to fix the probationary period by its rules. [Citation.]”
 
 (Id.,
 
 at p. 1354.)
 

 While
 
 Riveros
 
 is instructive, we recognize that it is somewhat different from the instant case because Charter section 109, subdivision (c) specifically appoints to the board of civil service commissioners the right to set the
 
 *617
 
 limit on the probationary period, whereas Charter section 202 gives no specific power to the board of rights to amend charges. Rather, Charter section 202 states that punishment of police officers cannot occur “except for good and sufficient cause shown upon a finding of ‘guilty’ of the specific charge or charges assigned as cause or causes therefor after a full, fair, and impartial hearing before a Board of Rights.”
 

 However, we can reconcile the facts of this case with the minor differences of
 
 Riveros
 
 by taking a broad view of the purposes of the board of rights. Although the board of rights is not the board of civil service commissioners, which the Charter specifically names in section 109, subdivision (c), it is an administrative board; and common sense dictates that it should be governed by general administrative rules. Indeed, the board of rights manual recognizes its administrative law origins, stating in the introduction that “the proceedings of a Board of Rights hearing involves administrative law, not criminal law, and it is necessary for Board members to realize that the underlying philosophy of administrative law prevails throughout these hearings. Administrative Tribunals were initiated as fact-finding bodies to appraise all of the information accumulated concerning a given situation and reach an equitable decision, without interference from unduly restrictive legal provisions.”
 

 Under the circumstances of this case, in which the board of rights amended charges to conform to evidence adduced at trial, we find persuasive the general rule that amendments to conform to proof are within the broad discretion of the presiding officer of administrative bodies.
 
 (Edison Co.
 
 v.
 
 Labor Board
 
 (1938) 305 U.S. 197, 225 [59 S.Ct. 206, 215, 83 L.Ed. 126].) According to Government Code section 11516 of the Administrative Procedure Act, “[t]he agency may order amendment of the accusation after submission of the case for decision. Each party shall be given notice of the intended amendment and opportunity to show that he will be prejudiced thereby unless the case is reopened to permit the introduction of additional evidence in his behalf. If such prejudice is shown the agency shall reopen the case to permit the introduction of additional evidence.”
 

 Moreover, contained within other sections of the Charter are provisions which appear to give the respondent broad latitude in enacting local regulations. According to section 2, subdivision (6) of the Charter, respondent shall have the right “[t]o make and enforce within its limits all such local, police, sanitary, safety, welfare and other regulations as are not in conflict with general laws . . . . ” That is, local regulations may be upheld where they are reasonable and are not in conflict with general law.
 
 (In re Porterfield
 
 (1946) 28 Cal.2d 91, 116 [168 P.2d 706, 167 A.L.R. 675];
 
 Sternall
 
 v.
 
 Strand
 
 (1946)
 
 *618
 
 76 Cal.App.2d 432, 435 [172 P.2d 921].) Additionally, under section 2, subdivision (8) of the Charter, respondent has the power “[t]o exercise the fullest measure of local self-government not in conflict with the Constitution and laws of the State of California.” In the same vein, article IX (Civil Service), section 101 states that the board of civil service commissioners “shall from time to time make rules to carry out the purposes of this article and for the examinations and appointments in accordance with its provisions.” That is, rules promulgated by a civil service board will not be interfered with as long as they are reasonable and not arbitrary and capricious.
 
 (Waters
 
 v.
 
 Civil Service Board
 
 (1955) 133 Cal.App.2d 733, 736 [284 P.2d 919].)
 

 Moreover, the rulemaking power of a civil service administrative board is not to be narrowly prescribed: “ ‘Courts should let administrative boards and officers work out their problems with as little judicial interference as possible .... Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.’ [Citations.]”
 
 (Nelson
 
 v.
 
 Dean
 
 (1946) 27 Cal.2d 873, 881 [168 P.2d 16, 168 A.L.R. 467]; see also
 
 Howell
 
 v.
 
 County of San Bernardino
 
 (1983) 149 Cal.App.3d 200, 206 [196 Cal.Rptr. 746] [although section 3304 of the Government Code (the Public Safety Officers Procedural Bills of Rights Act) guarantees an opportunity for administrative appeal, the details of the administrative appeal are left to be formulated by the local agency]; accord
 
 Binkley
 
 v.
 
 City of Long Beach
 
 (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903].)
 

 We conclude that the ability to amend charges is in conformance with, and not contrary to, the duties of the board of rights as set forth in the Charter. In order to implement its responsibility of conducting a full, fair, and impartial hearing, the board of rights must have the concomitant power to establish the proper procedures. The Charter has not, and cannot specify every procedural aspect for the board of rights to follow. That is why the board of rights manual was developed. Nor do we find that the board of rights manual’s prohibiting the construction of the manual in terms contrary to Charter section 202 poses an obstacle to our conclusion. The Charter calls for a full, fair, and impartial hearing on specific charges, which is not undermined by the board of rights’ ability to amend a charge to conform to proof. (See
 
 Cook v. Civil Service Commission
 
 (1960) 178 Cal.App.2d 118 [2 Cal.Rptr. 836] [charges which were made more specific upon terminated police officer’s request complied with notions of due process].)
 

 Brown
 
 v.
 
 State Personnel Bd.
 
 (1985) 166 Cal.App.3d 1151 [213 Cal.Rptr. 53] and
 
 Brooks
 
 v.
 
 State Personnel Bd.
 
 (1990) 222 Cal.App.3d 1068 [272 Cal.Rptr. 292] are not supportive of appellant’s general proposition that
 
 *619
 
 “[w]hen a hearing officer, operating under a specific set of rules, is found to have the discretion to amend a charging document, it does not necessarily follow that other hearing officers operating under other sets of rules have the same discretion.” In both cases, the plaintiffs were employees of the California State University and Colleges, and hence were expressly exempt from the civil service system. Thus, the findings of the courts that neither Education Code section 89539 nor any other provision of law (contrary to that provided in state civil service proceedings) permits the amendment of the charging document after the university has taken its disciplinary action have no relevance here.
 

 We deny appellant’s request for attorney fees under Code of Civil Procedure section 1021.5.
 

 Disposition
 

 The judgment is affirmed.
 

 Boren, P. J., and Fukuto, J., concurred.
 

 [1]
 

 “‘The Los Angeles Police Department has an internal disciplinary procedure, codified in the Los Angeles City Charter, which procedure is for the purpose of determining the existence of and punishing breaches of departmental rules and regulations. One facet of that procedure is a hearing before a ‘Board of Rights’ composed of superior officers. That board acts as the finder of fact and recommends to the Chief of Police the measure of discipline to be imposed. When a member of the department is accused of a violation leading to a hearing before a ‘Board of Rights,’ the accused member has a right to be represented by private counsel or to select any other member of the department below the rank of captain to act as his defense
 
 *615
 
 representative.”
 
 (Reynolds
 
 v.
 
 City of Los Angeles
 
 (1978) 76 Cal.App.3d 882, 884, fn. 1 [143 Cal.Rptr. 310].)
 

 [2]
 

 Article XI, section 5 provides: “(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith. [‘¡H (b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force (2) subgovemment in all or part of a city (3) conduct of city elections and (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees.”
 

 [3]
 

 The parties have provided the court with a copy of the 1987 Los Angeles Police Department Board of Rights Manual (8th ed.). The board of rights manual was reprinted in 1990, and a new edition released in 1994. Hence, the operative version, since appellant was charged and suspended in 1991 and 1992, is the 1987 version.